[L. A. No. 13260. In Bank.—January 30, 1932.]

LOUIE HYNDING, Respondent, v. THE HOME ACCIDENT INSURANCE COMPANY (a Corporation), Appellant.

Kidd, Schell & Delamer for Appellant.

Hubert T. Morrow, James S. Bennett, Frank G. Finlayson, Henry L. Knoop, Daniel W. Burbank, C. F. Laumeister, Bronson, Bronson & Slaven, Hartley F. Peart,

Cooley, Crowley & Supple, Jesse H. Steinhart, John J. Goldberg, Hadsell, Sweet & Ingalls, Donohue, Hynes & Hamlin, Crosby & Crosby, Treadwell, Van Fleet & Laughlin, O'Connor, Fitzgerald & Moran, Redman, Alexander & Bacon, Ledwich & Rosson, Ray W. Hays, Paul Nourse, Forrest A. Betts, George L. Greer, James M. Clement, and Levinsky & Jones, *Amici Curiae*, for Appellant.

Adam Thompson, Renwick Thompson and Gordon Thompson for Respondent.

LANGDON, J.—This is an action against an insurance carrier to recover the amount of a judgment previously obtained against an assured. Plaintiff was injured in an automobile accident as a result of the negligence of S. K. Tucker, and the latter was insured against liability with defendant company. Plaintiff sued Tucker and recovered judgment for $2,019.48, which sum he was unable to collect, the latter being insolvent. Plaintiff then brought this action against defendant company. In its answer, the company set up the defense that Tucker's report of the accident tended to show that he was free from blame, but that he had failed to co-operate with the company in obtaining information and witnesses, and, in addition, had failed to attend the trial to testify, although notice thereof had been given him and his expenses had been tendered by the company. It was further alleged in the answer that a request by the company for a continuance had been refused. At the time of the trial plaintiff moved to strike out that part of the answer setting up the above defense, and the court granted the motion. Judgment was subsequently rendered in favor of plaintiff and defendant appealed.

The policy of insurance under which defendant undertook to indemnify Tucker against claims for injury or death contained the usual stipulations requiring the assured to report accidents, claims and suits, and to co-operate with the company in securing information, evidence, the attendance of witnesses, and in effecting settlements and in prosecuting appeals. These conditions are clearly stated, and it is obvious that Tucker, the assured, failed to comply with them, and could not himself have held the company to its liability under the policy.

The right of an injured person to sue an insurance company after judgment has been obtained against the assured is derived from a statute passed by the legislature in 1919, which appears to have been enacted primarily for the purpose of protecting such injured person when the assured is bankrupt or insolvent. Thus, it is entitled: "An act relating to actions against an insurance carrier when the insured person is insolvent or bankrupt, or without property sufficient to satisfy execution on account of loss or damage insured against, and requiring policy to be exhibited in certain cases." (Stats. 1919, p. 776.) The act itself, so far as it is relevant here, provides as follows: *"No policy of insurance against loss or damage resulting from accident to, or injury suffered by another person and for which the person insured is liable . . . or against loss or damage to property caused by . . . any vehicle, and for which loss or damage the person insured is liable, shall be issued or delivered to any person in this state . . . unless there shall be contained within such policy a provision that the insolvency or bankruptcy of the person insured shall not release the insurance carrier* from the payment of damages for injury sustained or loss occasioned during the life of such policy *and stating that in case judgment shall be secured against the insured* in an action brought by the injured person or his heirs or personal representatives, in case death resulted from the accident, *then an action may be brought against the company on the policy and subject to its terms and limitations,* by such injured person, his heirs or personal representatives, as the case may be, *to recover on said judgment."* (Italics ours.)

The policy under consideration here followed the language of the act. The question before us is whether under that act the failure of the assured reasonably to cooperate with the insurance company in the preparation and trial of the action by the injured party may be set up as a defense by the company in the subsequent action against it to recover upon the judgment. As already stated, no uncertainty exists as to the terms of the policy or as to Tucker's violation thereof. Our problem therefore is solely one of statutory construction.

Our first inquiry necessarily must be directed to the decisions in this state. The case upon which plaintiff

principally relies in support of his position is *Malmgren* v. *Southwestern Automobile Ins. Co.*, 201 Cal. 29 [255 Pac. 512], where this court pointed out that the statute creates a contractual relation in every indemnity insurance policy, which inures to the benefit of any person who might be negligently injured by the assured. We there said (p. 33): "The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract *in derogation of or in conflict therewith*. The statute is founded upon principles of public policy and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by the private agreements of two of the parties. . . . The clause in the statute which provides that 'an action may be brought against the company, on the policy and subject to its terms and limitations, by such injured person' *was not intended to defeat its purpose* upon the theory that an action brought 'on the policy' binds the injured person to a repudiation or waiver of the benefits of the statute expressly adopted for his protection, but *it clearly has reference to those matters concerning which the insurer and assured could legally contract.*" (Italics ours.) We are satisfied that the position taken by us in this decision is sound and reasonable, but an interpretation of the opinion in the light of the facts of the case shows that it is not controlling here. The defendant insurance carrier sought to evade liability by setting up a provision in the policy to the effect that liability to an injured third party would not accrue until an execution obtained against the judgment debtor (the assured) were returned unsatisfied by reason of insolvency or bankruptcy. This court held that the statute made no such requirement, and that the provision was in derogation of the statutory purpose. It was, however, observed in the above case that there were matters on which the assured and the company could legally contract.

*Bachman* v. *Independence Indemnity Co.*, 112 Cal. App. 465 [297 Pac. 110], 112 Cal. App. 486 [298 Pac. 57], is another case which touches this question, but only by *dictum*. After some discussion and extensive reference to the Malmgren case, the court said in its opinion (112 Cal. App. 465 [297 Pac. 110, 118]): "We are of the opinion that after

the happening of an accident coming within the coverage provisions of a policy of insurance, such as we are now considering, neither the insurer nor the insured can, by any voluntary act, defeat the statutory right given to the injured person to bring an action on the policy after judgment recovered against the insured without some act or omission on the part of the injured (party) which will relieve the insurer from liability." This declaration was wholly unnecessary, for the policy involved contained no co-operation clause, and the finding of the lower court that there was no collusion was upheld. There being no violation by the assured of the conditions of the policy, remarks concerning the possible effect of such violation may be disregarded.

No other California case has dealt specifically with this question, and it must be obvious that the above decisions do not purport to determine it. In other states, the great majority of the decisions on similar statutes have held cooperation clauses to be enforceable, and the violation thereof by the assured to be a good defense against the injured party. The leading case is *Lorando* v. *Gethro*, 228 Mass. 181 [1 A. L. R. 1374, 117 N. E. 185], construing a statute providing that when the loss occurred by reason of the injury or death, "the liability of the insurance company shall become absolute". It did not state that the right to bring the action would be subject to the terms and limitations of the policy, as our statute does. Nevertheless, the court held that the liability was absolute "only in respect to the amount of the loss" and in the course of a thorough discussion said: "The clause does not mean that the other valid conditions of a contract of casualty insurance are abrogated. Whatever conditions are imposed by that contract, whether as to written notice by the insured to the insurer of any accident and claim, the delivery to the insurer of summons in case of action instituted, as to time of bringing action on the policy, or otherwise, are left in full force, unaffected by this clause. . . . It is almost inconceivable that the legislature would attempt to make an insurance company unconditionally liable to pay for a loss without giving it an opportunity to require any notices of loss or of actions at law, and thus to ascertain the circumstances out of which the loss arises, and its nature and extent at or near the time

when the event occurs, or to make reasonable conditions as to the establishment of its liability under the insurance contract. Such an intent . . . could not be inferred, in the absence of unequivocal words expressing that purpose so clearly as to be beyond discussion.''

The Court of Appeals of New York came to the same conclusion in *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271 [160 N. E. 367]. The statute under consideration differs from our own act in no substantial manner save in its requirement of return of execution unsatisfied as a basis of action against the insurance company. Chief Judge Cardoza said (p. 368): ''By express provision of the statute, the action is to be 'maintained by the injured person . . . against such corporation under the terms of the policy'. If the terms could be disregarded, insurers would be helpless to defend themselves against chicanery or covin. They might then be held, though there had been neither notice of the claim nor opportunity reasonably prompt to investigate the merits. Cf. *Lorando* v. *Gethro*, 228 Mass. 181, 185 [1 A. L. R. 1374, 117 N. E. 185.] ''The plaintiff argues that a bankrupt holder of a policy colluding with an insurer, could refuse to co-operate, and thus enable the insurer to cheat the statutory remedy. With equal force, the defendant can argue that a bankrupt assured could collude with a claimant to fasten upon the insurer a fictitious liability. The statute was prompted by a definite mischief. Cf. *Lunt* v. *Aetna Life Ins. Co.*, 253 Mass. 610 [149 N. W. 660]; *Roth* v. *National Auto Mut. Cas. Co.*, [202 App. Div. 667, 195 N. Y. Supp. 865]. Before its enactment, the insolvency of the assured was equivalent in effect to a release of the surety. The policy was one of indemnity against loss suffered by the principal, and loss to him there was none if he was unable to pay. The effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment had been satisfied. *The cause of action is no less but also it is no greater. Assured and claimant must abide by the conditions of the contract.*'' (Italics ours.)

Many other well-considered cases are to the same effect. See *Stacey* v. *Fidelity & Casualty Co.*, 114 Ohio St. 633 [151

N. E. 718] ; *Guérin* v. *Indemnity Ins. Co.*, 107 Conn. 649 [142 Atl. 268] ; *Miller* v. *Metropolitan Casualty Co.*, 50 R. I. 166 [146 Atl. 412] ; *George* v. *Employers' Liability Assur. Corp.*, 219 Ala. 307 [72 A. L. R. 1438, 122 South. 175] ; *Indemnity Ins. Co.* v. *Davis' Admr.*, 150 Va. 778 [143 S. E. 328] ; *Bachhuber* v. *Boosalis*, 200 Wis. 574 [229 N. W. 117] ; *Schneider* v. *Autoist Mutual Ins. Co.*, 346 Ill. 137 [178 N. E. 466] ; *New Jersey Fidelity & Plate Glass Ins. Co.* v. *Love*, 43 Fed. (2d) 82 ; Vance on Insurance, 2d ed., 1930, sec. 178 ; 13–14 Huddy, Ency. of Automobile Law, 9th ed., sec. 325 ; note, 44 Harv. L. Rev. 470. It may be noted that. subsequent to the decision in *Lorando* v. *Gethro, supra*, the Massachusetts statute was amended to abrogate the rule of that case. Several other states have also, by recent legislation, enlarged the rights of the injured person. (See Heyting, Statutory Liability of Automobile Insurance Companies, 17 Amer. Bar Assn. J. 15, January, 1931.)

In *Royal Indemnity Co.* v. *Morris*, 37 Fed. (2d) 90, the Circuit Court of Appeals for the Ninth Circuit considered the California statute, declared it to be similar to that of New York, and followed the holding of *Coleman* v. *New Amsterdam Casualty Co., supra*. In *Metropolitan Casualty Ins. Co.* v. *Colthurst*, 36 Fed. (2d) 559, the same court considered our decision in *Malmgren* v. *Southwestern Ins. Co., supra*, and correctly concluded that it did not purport to decide the validity of conditions requiring co-operation.

The only cases which maintain a contrary view appear to be *Finkelberg* v. *Continental Casualty Co.*, 126 Wash. 543 [219 Pac. 12]ʹ, *Metropolitan Casualty Ins. Co.* v. *Albritton*, 214 Ky. 16 [282 S. W. 187], and *Edwards* v. *Fidelity & Casualty Co.*, 11 La. App. 176 [123 South. 162]. In the Finkelberg case, there was definite evidence of collusion, for the assured gave the company a release. Nevertheless, the case was expressly disapproved on the point in question by the later case of *Merriman* v. *Maryland Casualty Co.*, 147 Wash. 579 [63 A. L. R. 1040, 266 Pac. 682]. In the Albritton case, the construction was of the policy and not the statute, and the decision was not grounded solely on the enforceability of the co-operation clause. The insurance company had knowledge of the suit and handled the defense. The court observed that no pretense was made "that any fact material

.to the defense of the suits . . . was omitted or undeveloped .on these trials". *Edwards* v. *Fidelity & Casualty Co.*, *supra*, is directly in point, but, as clearly appears, is contrary to the great weight of authority.

We see no escape from the conclusion that the violation of the co-operation clause by the assured was a valid defense against the injured party's action. We say this with the knowledge that in some cases it may work a hardship on such party, who is ordinarily in no position to force the assured to co-operate. Further, there is the possibility of collusion between the assured and the insurance company, to defeat the rights of the injured party. This possibility is balanced, of course, by an equal possibility of collusion between the assured and the injured party to defeat the rights of the insurance company. (*Coleman* v. *New Amsterdam Casualty Co., supra.*) Neither of these possibilities, however, is properly subject to consideration here in view of the terms of our statute. It is not a compulsory insurance law, requiring every automobile owner or those in a particular class to secure insurance for the protection of the public generally. This latter type of statute, frequently found in the regulation of taxicabs and other carriers for hire, has usually been given a construction consonant with its purpose, as a result of which the injured party is permitted to recover against the insurance company regardless of the acts of the assured. (See *Kruger* v. *California Highway Indemnity Exch.*, 201 Cal. 672 [258 Pac. 602]; *Boyle* v. *Manufacturers' Liability Ins. Co.*, 96 N. J. L. 380 [115 Atl. 383]; *Devlin* v. *New York Mutual Casualty Taxicab Ins. Co.*, 123 Misc. Rep. 784 [206 N. Y. Supp. 365]; *Cohen* v. *Metropolitan Casualty Ins. Co.*, 233 App. Div. 340 [252 N. Y. Supp. 841]; Marx, Compulsory Compensation Insurance, 25 Columb. L. Rev. 164.) █ Our statute regulates to a certain defined extent private policies of indemnity insurance. It deprives the insurance carrier of the defense of insolvency or bankruptcy of the assured, and it permits an action to be brought by the injured party on the policy after judgment against the assured, but the action is "subject to its terms and limitations". The object of the statute, similar to that of most of the other acts, was to reach a particular evil and not to make this private voluntary

contract serve the purpose of compulsory insurance. (See *Coleman* v. *New Amsterdam Casualty Co.*, *supra;* *Merchants Mutual Automobile Liability Ins. Co.* v. *Smart*, 267 U. S. 126 [69 L. Ed. 538, 45 Sup. Ct. Rep. 320]; *Guerin* v. *Indemnity Ins. Co.*, 107 Conn. 649 [142 Atl. 268]; Vance on Insurance, sec. 178, p. 682 et seq.; note, 25 Columb. L. Rev. 661.) ■ The proviso that the action is subject to the terms and limitations of the policy, if it means anything, means that the right of action is not absolute, but that there are some defenses available to the company. Of course, no defense can be set up which defeats the statutory object, and of this type is a stipulation involving the financial responsibility of the assured, or a requirement of proof of insolvency or bankruptcy, or return of execution unsatisfied. (*Malmgren* v. *Southwestern Ins. Co.*, *supra.*) We are also of the opinion, and we think most of the authorities are agreed, that the provision must be one reasonably necessary for the protection of the insurance company, and one which can readily be complied with by the assured; and that the violation of the condition by the assured cannot be a valid defense against the injured party unless in the particular case it appears that the insurance company was substantially prejudiced thereby. (See *George* v. *Employers' Liability Assur. Corp.*, 219 Ala. 307 [72 A. L. R. 1438, 122 South. 175]; *Indemnity Ins. Co.* v. *Davis' Admr.*, 150 Va. 778 [143 S. E. 328]; 13–14 Huddy, Encyclopedia of Automobile Law, 9th ed., sec. 298, p. 378.) Here these elements are all present. ■ To require the co-operation of the assured to the extent of attendance at the trial, when he is a material and important witness, is a perfectly reasonable condition. Failure to testify may be as damaging as failure to give notice of the accident or of the suit. There is, of course, no obligation on his part to testify favorably to the company's interests, but here his report of the accident indicated that a defense existed, and it would normally be expected that his testimony would bear this out. Under these circumstances the company was clearly prejudiced by his failure to appear. In any event, the question of such prejudice should have been considered below.

To give our statute any construction other than that which we have indicated would nullify part of its language and

raise the serious constitutional objection that its subject is not expressed in its title. (Const., art. IV, sec. 24.) We think that the trial court was in error in striking out the defense set up in the answer.

The judgment is reversed.

Curtis, J., Preston, J., Shenk, J., and Waste, C. J., concurred.