[Civ. No. 9271.   First Appellate District, Division One.—July 30, 1935.]

ERNEST PANHANS, Respondent, v. ASSOCIATED IN-
    DEMNITY CORPORATION (a Corporation), Appel-
    lant.

John J. Taheny and John A. Sullivan for Appellant.

Arthur Joel for Respondent.

THE COURT.—The respondent, Ernest Panhans, was severely injured when knocked down by an automobile owned and driven by George King, against whom Panhans subsequently obtained a judgment for damages in the sum of $18,882.75. At the time the accident happened King was covered by a policy of public liability insurance for the principal sum of $5,000 issued by the appellant, Associated Indemnity Company, and King being judgment-proof, Panhans brought the present action under the statutory authority of chapter 367 of the Statutes of 1919 (p. 776) against appellant as King's insurance carrier, to recover the sums called for by said policy, and upon trial before a jury was awarded a verdict for $7,655, which included interest on the King judgment. From the judgment entered on said verdict the insurance company has appealed.

The main defense urged by appellant in the trial court was the alleged breach by King of the so-called cooperation clause of the insurance policy; and one of the grounds urged for reversal on this appeal is that the trial court erred in ruling during the trial and instructing the jury to the effect that in order to relieve itself of responsibility under the policy the insurer must show that the breach, if any there was, affected a material condition of the policy and that the breach operated to the substantial prejudice of the insurance carrier. In this connection appellant cites the provisions of section 2611 of the Civil Code, which provides that "A policy may declare that a violation of specified provisions thereof shall avoid it, otherwise the breach of an immaterial provision does not avoid the policy", and calls attention to the fact that the cooperation clause of the policy in the present case concludes as follows: "The failure of Insured to cooperate as aforesaid shall terminate all liability of the Company under this Policy." The cases relied on by appellant in support of its contention are *Fountain* v. *Connecticut Fire Ins. Co.*, 158 Cal. 760 [112 Pac. 546, 139 Am. St. Rep. 214], *McKenzie*

v. *Scottish Union & Nat. Ins. Co.*, 112 Cal. 548 [44 Pac. 922], *Bastian* v. *British American Assur. Co.*, 143 Cal. 287 [77 Pac. 63, 66 L. R. A. 255], *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 177 Cal. 771 [171 Pac. 935], *Wilkinson* v. *Standard Accident Ins. Co.*, 180 Cal. 252 [180 Pac. 607], and *Solomon* v. *Federal Ins. Co.*, 176 Cal. 133 [167 Pac. 859]. In our opinion the cases cited are not in point here, however, for the following reasons: Each of them dealt with a character of policy entirely different from the one here involved. That is to say, those cases concerned policies which insured against such risks as fire, accidental death and industrial accidents, where only two parties were interested, namely, the insurer and the insured, and where the breach occurred prior to the happening of the event which brought about the liability of the insurer, such as the making of fraudulent statements or false representations by the insured in procuring the policy, or the failure by him to comply with the conditions imposed therein as to the operation of or protection to be given to the property insured; while in the present case we are dealing with a policy of public liability insurance which by statutory enactment is made to inure to the benefit of third persons, and where the alleged breach by the insured occurs after the happening of an event giving rise to the liability thereunder of the insurer. And there are two recent cases (*Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743 [7 Pac. (2d) 999, 85 A. L. R. 13], and *Purefoy* v. *Pacific Automobile Indemnity Exchange*, (Cal.)█ 46 Pac. (2d) 143) which deal directly with this class of policy; and in each case it was held in substance that before the insurer may relieve itself of liability to a third person for any breach of the cooperation clause by the insured occurring subsequent to the happening of the event which makes the policy operative in favor of such third person, it is essential for the insured to establish by evidence that a material provision of the cooperation clause was breached and that the insured suffered substantial prejudice thereby. It is true that in the Hynding case the cooperation clause apparently did not contain the specific provision that failure of the insured to cooperate avoided the policy; but

such provision was present in the Purefoy case. It is true also that a rehearing has been granted in the Purefoy case and that consequently the decision therein cannot be considered as a final adjudication. However, the precise point upon which the rehearing was granted does not appear and the reasoning used in that decision in passing upon the legal problem with which we are here confronted coincides entirely with the conclusion we have reached herein, and therefore in our opinion should be followed by us in the present case. In this regard the court therein said: ''Respondent relies upon a strict and literal interpretation of the cooperation clause of its insurance contract with Austin, requiring that assured give 'immediate written notice of any accident, claim, loss or suit hereunder . . . ', and other requirements customary in such insurance contracts, which conclude with the declaration that 'immediately upon a failure or refusal to perform any one or more of said conditions this policy and the liability of the Exchange, if any, thereunder shall automatically terminate'. Were such an interpretation given effect in all cases, it would open an avenue of temptation to insurers, through collusive action with judgment-proof clients, to evade payment of just claims. A contract of insurance against liability is one for the benefit of unknown third parties who become known and identified upon being injured by the insured. It would be a strange and useless proceeding on the part of the legislature to give to the injured party the right to sue the insurer (Stats. 1919, p. 776), if such action could be defeated by the insurance company and the insured without the knowledge or consent of, or any act on the part of, the injured person. (*Malmgren* v. *Southwestern Automobile Ins. Co.*, 201 Cal. 29 [255 Pac. 512] ; *Bachman* v. *Independence Indemnity Co.*, 112 Cal. App. 465, 483 [297 Pac. 110, 298 Pac. 57].) The failure of Austin, the insured, to fully cooperate with the insurance company did not, therefore, deprive plaintiff of his right of action in this case.'' And in conclusion the court goes on to hold that the insurer in that case was not prejudiced by the breach of the cooperation clause, and the judgment in the action was reversed. It is our opinion, therefore, that the trial court in the present case did not err in making the rulings and giving the instructions of which appellant complains.

■ Turning then to the questions of whether King did breach a material provision of the cooperation clause, and if so whether the breach operated to the substantial prejudice of appellant, the record discloses the following facts, which are not disputed: The clause in question provided: ''The insured shall cooperate fully with the Company and aid, if the Company deems necessary, without expense to the Insured, in securing information and evidence and the attendance of witnesses and in the settlement or defense of any suit or prosecution of any appeal. In case of suit the Insured shall, at his own expense, present himself in due time for the preparation of his defense, at the office of the attorney selected by the Company to defend such suit, and shall attend the trial of such suit. The Insured shall not admit or voluntarily assume any liability or in any manner aid or abet any claimant; nor shall the Insured settle any claim, or incur any expense, except for immediate surgical relief, except at the Insured's own cost. The Company shall have the right to settle any claim or suit at its own cost at any time. The failure of Insured to cooperate as aforesaid shall terminate all liability of the Company under this policy.'' Conforming to the foregoing provisions, King, on the day of the accident, voluntarily presented himself at appellant's office in San Francisco, where he then lived, and was interrogated fully by appellant's claims superintendent, following which he made and signed a full report of the circumstances attending the accident, which prove beyond question and as a matter of law that the accident was proximately caused by King's negligence by attempting, in violation of municipal ordinances, to drive his automobile between a westbound Market street car and the pedestrian safety zone on the northwest corner of Powell and Market Streets in San Francisco, about 2 o'clock on the morning of April 16, 1930, just as Panhans and another man were running from said safety zone to board said street car. The impact threw Panhans' companion on the front bumper of the street car and hurled Panhans partly under its front trucks, with the result that Panhans' hand was badly mangled by the wheels of the street car and he sustained other severe injuries. The report goes on to state that there was no traffic at the time to obscure King's view of the safety zone and that as he was crossing the intersection he saw the men standing in the safety zone. The only pos-

sible excuse offered by him was that the men did not attempt to board the street car when it stopped opposite the safety zone, but ran out afterwards to board it as it started to move on; but he admitted that at no time while crossing the intersection or approaching or attempting to pass the street car did he slacken his speed, which he fixed at twenty-five miles an hour. His report also set forth that he was then living with his parents at 545 O'Farrell Street in San Francisco, and he gave the names of his present and former employers; and he told the company's agent at that time that he believed he could obtain the names of two newsboys who witnessed the accident and would try to do so. He called again at the company's office on May 26, 1930, and was again interrogated, at which time he informed the company's agent of his inability to secure the names of said witnesses. At neither of the interviews was he requested to do anything more than to keep the company advised as to his whereabouts in case he changed his place of residence. Some time thereafter, the date not being shown by the record, King moved to Los Angeles, and on September 18, 1930, wired the company that he was then living at 900 South Serrano Street in that city; that he had been served with summons and complaint in the action for damages brought against him by Panhans, and he gave the name of Panhans' attorney. The company wrote back requesting King to forward the documents served upon him to the company and to give the date and place of service. It also requested him to send the name and address of any attorney he might desire to employ personally in the case. King replied by letter, dated September 20, 1930, giving the same address, and stated that he did not consider it necessary to employ counsel for himself; that he had no property whatever, only a small salary and many debts; and that if judgment were rendered against him he could "do nothing about it". And in a postscript to the letter he added: "*Please advise me as to outcome of trial.*" (Italics ours.) This letter was received by the insurer at its office in San Francisco on September 22, 1930, but it made no reply thereto until a month later, on October 25, 1930, at which time it advised King by letter that a motion was about to be made to set the case for trial and stating that "inasmuch" as it would be necessary for King to be present at the trial in San Francisco, he should keep the company informed of his

whereabouts so that it could advise him of the trial date. The company received no acknowledgment of the receipt of that letter, nor was the letter returned undelivered. The company did not again attempt to communicate with King until January 9, 1931, at which time it sent him a registered letter to the Los Angeles address calling attention to the contents of its letter dated October 25, 1930, asking him to write at once, and stating that his cooperation was essential if he expected the company to extend protection under the policy. And a month later, February 17, 1931, the company again wrote two letters to King, by registered mail, one addressed to his San Francisco address and the other to his Los Angeles address, calling attention to its previous letters of October 25th and January 9th, and stating that it was necessary for him to be present at the trial and that unless the company heard from him within ten days of the receipt of its letter, it would be necessary to deny him the protection of the policy for breach of the cooperation clause therein. All three letters, the one dated January 9th and the two dated February 17th, were returned to the company undelivered; and about February 20th the company learned through its Los Angeles investigators that about December 12, 1930, King left the Los Angeles address and later was confined in and released from the Los Angeles city prison; whereupon, and on March 11, 1931, the company again mailed registered letters to King addressed to San Francisco and Los Angeles, both of which were returned undelivered, wherein it stated that the case had been set to be tried on April 2, 1931 (which was the first time the date of trial had been mentioned in any of the letters), and that it had withdrawn its defense because of King's breach of the cooperation clause; and on the following day, March 12th, the attorneys it had employed served notice of withdrawal from the case. Consequently, appellant having withdrawn from the case, the trial took place on April 2, 1931, the date originally set therefor, in the absence of any legal or personal representation on the part of King or appellant, and judgment by default was entered against King for $18,882.75.

It is held generally that the question of whether there has been a lack of cooperation on the part of the insured sufficient to constitute a breach of the policy is one of fact. (13–14 Huddy, Automobile Law, sec. 298, p. 378, and cases

cited; see, also, *Metropolitan Casualty Ins. Co.* v. *Blue,* 219 Ala. 37 [121 So. 25]; *Finkle* v. *Western Automobile Ins. Co.,* 224 Mo. App. 285 [26 S. W. (2d) 843]; *Coleman* v. *New Amsterdam Casualty Co.,* 247 N. Y. 271 [160 N. E. 367, 72 A. L. R. 1442]; *Francis* v. *London Guar. & Acc. Co.,* 100 Vt. 425 [138 Atl. 780].) ▮ In the present case, as will be seen from the undisputed facts above narrated, from the very day of the accident up to the time of King's disappearance on December 12, 1930, King was guilty of no act or omission which could be said to constitute a violation of the cooperation clause of the policy. During all that period of time he remained subject to appellant's call and so far as the record shows appellant made no request whatever upon him to do anything which he refused or neglected to do. On the other hand, the admitted facts show he freely and voluntarily cooperated with appellant in every way possible. As stated, he called at its office on the day of the accident and gave a full account thereof orally and in writing, and called again a month later. In the meantime he endeavored to secure witnesses to aid in the defense of the action and immediately upon being served with summons in Los Angeles he so notified appellant and in accordance with its instructions forwarded the papers at once to the company's office in San Francisco; and it would seem that the eight months' period elapsing between the date of the accident and King's disappearance in Los Angeles, which was approximately three months after appellant received copies of the summons and complaint, afforded appellant ample time to call on King for any assistance it desired in the preparing of his defense to the action. But, as stated, it made no request whatever upon him during that time except to keep it informed of his whereabouts.

It is clear, therefore, that King committed no breach of the policy up to December 12, 1930, the time he left the Los Angeles address without notifying appellant as to his future whereabouts, and the issue narrows down to the single question of whether under the circumstances above stated his failure to attend the trial constituted a breach of a material provision of the policy, the effect of which was prejudicial to appellant. When all of the facts surrounding his failure so to do are taken into consideration, we are not prepared to hold, as a matter of law and contrary to the conclusion reached thereon by the jury, that it did. As above pointed out, ap-

pellant elected to repudiate its liability under the policy and withdrew its attorneys from the case some three weeks prior to the date of trial. Consequently, even though King had attended the trial, his presence would have served no useful purpose. ■ Appellant contends, however, that such repudiation and withdrawal was essential in ·order to avoid a waiver of its rights under the policy. But this position cannot be sustained in view of the recent decision in *McDaniels* v. *General Ins. Co.*, 1 Cal. App. (2d) 454 [36 Pac. (2d) 829], which holds directly to the contrary. Even assuming, however, as appellant contends, that the law permits it in support of its repudiation and .withdrawal to claim the advantage of any acts or omissions on the part of King occurring subsequent to such repudiation and withdrawal, and assuming also that King's failure to attend the trial constituted a breach of the cooperation clause, it cannot be successfully maintained that such breach operated to appellant's prejudice for the reason that King's presence at the trial could have served but one purpose, namely, to testify as to the manner in which the accident happened, and obviously his testimony, if given in conformity with the facts set forth in the written report theretofore made by him, instead of being beneficial to his case would have been wholly detrimental thereto, because as already stated the facts set forth in said report prove in themselves, as a matter of law, that Panhans' injuries were proximately caused solely by King's negligence. For the reasons stated we find no legal ground upon which to interfere with the conclusion reached by the jury.

In furtherance of its contention that King's failure to attend the trial was prejudicial, appellant cites certain language used in the Hynding case, *supra*. But the differentiating point between the two cases is this: There the decision expressly states that the "report of the accident [made by the insured] indicated that a defense existed", and the court goes on to say that "it would normally be expected that his testimony would bear this out"; whereas here the insured's report of the accident indicated just the opposite. We find no merit in the remaining points made by appellant, including those relating to the instructions and the amount of the verdict rendered against appellant.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 29, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 26, 1935.