[Civ. No. 9895.  First Appellate District, Division One.—October 28, 1935.]

BERTHA NORTON, Respondent, v. THE CENTRAL SURETY AND INSURANCE COMPANY (a Corporation), Appellant.

Barry J. Colding, Theodore Hale and Carroll B. Crawford for Appellant.

T. F. Peterson and Charles Reagh for Respondent.

KNIGHT, J.—The plaintiff, Bertha Norton, sued Floyd Puter for damages in Del Norte County on account of severe personal injuries sustained by her while riding as a guest in an automobile owned and driven by Puter. The action was tried before the court sitting without a jury, and plaintiff was given judgment for $3,500. An appeal was taken in behalf of Puter and the judgment was affirmed. (*Norton v. Puter*, 138 Cal. App. 253 [32 Pac. (2d) 172].) At the time of the accident Puter was covered by a policy of public liability insurance issued by Central Surety and Insurance Company, the appellant herein, and its attorneys took charge of the case for Puter, defended it before the trial court, and took the appeal in his behalf. Following the affirmance of the judgment plaintiff was unable to collect any part thereof from Puter, and thereupon, pursuant to statutory authority

(Stats. 1919, p. 776), she brought the present action in the city and county of San Francisco against appellant, as Puter's insurance carrier, to recover on said policy of insurance. At the trial the company sought to be relieved from any responsibility under the policy upon the ground that Puter had breached the so-called cooperation clause thereof; but the jury before which the action was tried found against said company on the defense so interposed, and judgment in favor of plaintiff was entered accordingly, from which said company appealed.

It appears from the opinion in *Norton* v. *Puter, supra,* as well as from the facts of the present case, that the accident happened a short distance south of Crescent City, just before daylight, during the month of November. Two other persons besides plaintiff were riding with Puter at the time, a young lady named Nichols, and Puter's son. As also shown by the decision in *Norton* v. *Puter, supra,* the action against Puter was tried upon the theory that Puter's negligence constituted wilful misconduct; and on appeal it was held that the facts alleged and proved were legally sufficient to sustain a finding to that effect, the evidence proving, in this regard, that Puter was driving the automobile at a reckless and excessive rate of speed, through a rainstorm, over a slippery mountain highway, when it skidded into a ditch and turned over three times. Plaintiff's injuries included a fractured and dislocated pelvis, and numerous lacerations. All of the parties involved in the accident and the attorneys employed by plaintiff to handle her case in Del Norte County lived in and about Crescent City, which admittedly is a community of small size; and all were on friendly terms with each other. Plaintiff's leading counsel was district attorney of the county, and Puter was a searcher of records, whose place of business was located in the same small building in which the district attorney maintained an office.

The grounds urged for reversal of the judgment in the present case are that the court erred in denying appellant's motions for a directed verdict in its favor, for judgment in its favor notwithstanding the verdict, and for a new trial. We find no merit in the appeal.

The issue of whether there has been a lack of cooperation on the part of the insured sufficient to constitute a breach

of the policy is one of fact (*Panhans* v. *Associated Indemnity Corp.*, 8 Cal. App. (2d) 532 [47 Pac. (2d) 791]; 13–14 Huddy on Automobile Law, sec. 298, p. 378, and cases cited; *Metropolitan Casualty Ins. Co.* v. *Blue*, 219 Ala. 37 [121 So. 25]; *Finkle* v. *Western Automobile Ins. Co.*, 224 Mo. App. 285 [26 S. W. (2d) 843]; *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271 [160 N. E. 367, 72 A. L. R. 1443]; *Francis* v. *London Guar. & Acc. Co.*, 100 Vt. 425 [138 Atl. 780]); and it appears to be well settled that the violation by an insured of the conditions of a clause of a policy such as the one here involved is not a valid defense against the injured party unless in the particular case it appears that the insurance company was substantially prejudiced thereby. (*Hynding* v. *Home Acc. Ins. Co.*, 214 Cal. 743 [7 Pac. (2d) 999, 85 A. L. R. 13]; *Panhans* v. *Associated Indemnity Corp., supra.*) Furthermore, the burden of proving the affirmative of both of the above issues is obviously on the insurer. Therefore, in the present case, the implied adverse findings of the jury on said issues, as well as those by the trial court in ruling on the motions above mentioned, are conclusive on this appeal unless it can be held as a matter of law that the evidence in the case is without substantial conflict and the only reasonable inference to be drawn therefrom is contrary to said findings.

Stated in a different way, where as here an attack is made upon findings of fact upon the ground that the evidence is legally insufficient to support them, the power of the reviewing court begins and ends with the inquiry as to whether there is any substantial evidence in the case to sustain said findings; or, if the evidence be conflicting, whether the facts and circumstances are such that reasonable minds might draw different inferences therefrom; and if these inquiries be answered in the affirmative, the findings must be sustained. Moreover, in determining these questions all inferences reasonably deducible from the evidence favorable to the prevailing party must be indulged in by the reviewing court. (2 Cal. Jur., pp. 918–926.)

The alleged acts or omissions relied upon by appellant as constituting a breach of the cooperation clause of the policy are set forth in the beginning of its brief. But apparently all of the evidence relating to the subject-matter thereof is not contained in the record before us, because much of it, it seems, consisted of the testimony given at the Puter

trial, a transcript of which was introduced in evidence in the present case but not incorporated in the record on this appeal; nor is the substance thereof set forth in appellant's brief. In that state of the record it will be presumed that the evidence supports the conclusions reached by the jury and the trial court, and an affirmance of the judgment would be justified upon that ground without making further inquiry into the sufficiency of the evidence. (*Eddie* v. *Schumacher Wall Board Co.*, 79 Cal. App. 318 [249 Pac. 235]; *Shepard* v. *Yale*, 94 Cal. App. 104 [270 Pac. 742]; *Ross* v. *Burr*, 69 Cal. App. 286 [230 Pac. 986]; *Yolland Ice etc. Co.* v. *Mulcahy*, 72 Cal. App. 722 [238 Pac. 119]; *Runyon* v. *City of Los Angeles*, 40 Cal. App. 383 [180 Pac. 837].)

■ However, we are satisfied that the evidence appearing in the record before us is legally sufficient to support the conclusions of the jury and the trial court that the alleged acts and omissions complained of either were not substantiated, or were of such a nature as did not operate to appellant's prejudice, in preparing or defending the case, or otherwise. The failure of Puter to meet appellant's attorney as requested by letter upon his arrival in Crescent City in April following the accident, to take certain depositions, was doubtless looked upon by the jury as a matter of minor importance. He was present at the appointed time to have his deposition taken, and his failure to meet appellant's attorney upon his arrival was due, so Puter claimed, to other business engagements. Nor can it be said that appellant was prejudiced by the fact that Puter showed the letter he received to plaintiff's attorneys for the reason that a letter of similar import was sent direct to plaintiff's attorneys, except that it contained no invitation to meet the writer of the letters upon his arrival; moreover, the letter sent to Puter shows in itself that it contained nothing of a confidential nature. In this connection, too, it may be stated that appellant's attorney arrived in Crescent City by stage about noon; that all depositions were taken that afternoon as scheduled and he was able to return south on the stage, leaving about 3 o'clock the same day, in accordance with the desire expressed by him in his letters. In answer to the second and third complaints made by appellant, the evidence shows that the trial of the action was set for July 5th; and appellant's attorney wrote to Puter saying he would arrive in Crescent City about noon on July 4th, and

asked Puter to call at his hotel that afternoon in order that they might review the facts of the case. Puter did not call at the hotel, however, until about 5 o'clock that evening. The reason for the delay was, so he stated, that July 4th being a holiday, he had certain social engagements for that afternoon which he did not feel called upon to set aside. When he did arrive at the hotel an altercation took place between him and appellant's attorney which was marked by considerable unpleasantness on both sides, and the interview ended abruptly, so appellant's attorney testified, when he told Puter to be in court the next morning, to which Puter replied he would not be there, that he was too busy, that "this girl was morally entitled" to damages, and that if he were forced to come into court his testimony would not do the insurance company any good; whereupon appellant's attorney told Puter he had violated his policy, that if judgment were given in plaintiff's favor he, Puter, would have to pay it; and that Puter could "accept that" as his notice. Puter was not present in the courtroom at the morning session, the explanation given by him for his absence being that he was busy; but he was in and about the courthouse all morning, and therefore available if wanted; and during the afternoon session, before plaintiff closed her case, he was in attendance in the courtroom, and later was called as a witness for the defense and testified fully as to the facts of the case. Further contention is made that Puter's actions interfered with the preparation of the defense to the action; but the evidence does not so show. It appears therefrom that during the eight months which elapsed between the date of the accident and the date of the trial of the action the insurance company obtained written statements as to the facts surrounding the accident from plaintiff, her principal witness, and Puter, and in addition their depositions were taken three months before the trial began; and it is conceded that no application was ever made for a postponement of the trial for any purpose. Furthermore, as will be noted from the decision in the Puter case, there was little, if any, dispute as to the facts, the main question at issue in the case being more of a legal one, namely, whether the admitted facts constituted wilful misconduct. It is true that in April Puter, in response to the letter written to him by appellant's attorneys, made the suggestion,

among others, that plaintiff's claim be settled if possible before trial. But at that time the insurance carrier's attorneys had assumed control of the case and had notified Puter that they were acting for him; and it is not intimated that he ever communicated any such statement to any other person. It cannot be successfully maintained, therefore, in view of the admitted facts of the case, that the suggestion to his attorneys of a settlement out of court was out of order or improper. Appellant makes the further charge that Puter urged and encouraged plaintiff to take legal action against him. But the evidence does not substantiate the charge. The facts are that prior to the commencement of the action for damages Puter took plaintiff to her doctor's office two or three times for treatment, and on one of these occasions, in response to an inquiry made by her in the presence of a third party as to what he thought she should do about asking compensation for her injuries, he remarked that he did not like to advise her, but that "if she expected to get justice for her injuries she should consult an attorney and a good one". And in explanation of the remark Puter stated that this was the only time he ever talked with her about her case, and that at the time he made the remark he realized that sooner or later he would be sued.

It is a fact also that Puter, while testifying as a witness for the defense, indicated in one of his answers that in his opinion plaintiff was entitled to damages; but as will be pointed out appellant is not in a position to complain thereof because the opinion so expressed by Puter was elicited, unnecessarily, by appellant's counsel on redirect examination after persistent inquiry as to whether Puter was desirous that plaintiff should be awarded a judgment, and after full knowledge on the part of appellant's counsel that such was Puter's belief. Some of the questions and answers so asked and given on redirect examination were as follows: "Q. Have you any interest in the outcome of this case? A. Absolutely none, except I want to see the young lady get a square deal. Q. You would like to see her get a judgment in this case? A. If the court thinks it is justice, yes. Q. You are the defendant? A. I am. I feel sorry every time I look at that young lady. Q. As a matter of fact, you have been very much interested in her getting a judgment in this case?

A. Absolutely I have not. Have not seen the young lady to speak of except in the presence of other people, more than two or three times since the accident. Q. Have you told her you were anxious for her to get a judgment against you? A. No. Except if I mentioned it at all I hoped she would be treated fairly. Don't know if I even said that. If she said I did I presume I must have said something along that line. . . . Q. Still you are anxious to see her get a judgment. A. I am anxious to see that girl get justice. That is up to the evidence and up to the court. It makes no difference to me. · Q. It makes no difference to you whether or not you have to pay the judgment in this case? A. Makes no difference to me. The main thing is to have all the evidence go before the court. Whatever the court rules is satisfactory to me. I am sorry, as I say, every time I see the young lady. She has been hurt. I don't like to admit it is my fault. She was hurt out of my car.'' Finally in response to another question by appellant's counsel as to whether Puter had discussed the case with plaintiff, Puter was allowed without protest to give a rather lengthy explanation wherein, after expressing sympathy for plaintiff's injured condition, he said: '' . . . I may be wrong; I may not be wrong; but I could see and realize that sooner or later I would be sued. No question about that. If any person in the world is entitled to what is reasonable in damages she is entitled to it. If it comes out of me she is entitled to it. If the law says she is not entitled to it it is just a good break for me, that's all, and her misfortune.'' It is against a portion of this last answer that appellant directs its criticism. But no motion was made to strike out the answer or any part of it, and as will be seen, appellant's counsel not only repeatedly invited and encouraged Puter to reveal his personal opinion, but the record shows also that such answer was clearly anticipated, because in April, in a letter written to appellant's counsel, Puter said: ''There is no doubt in my mind, the young lady is badly injured and is entitled to damages, from a moral standpoint at least. I am not presuming to know anything of the law in the matter. Further, I am not hiring any attorney as far as I am concerned. I am willing to take the chance''; and later, on the day the depositions were taken, and again on the evening before the trial began, Puter told appellant's counsel substantially

the same thing. If, therefore, it was appellant's purpose, at the trial of the action for damages, to establish that Puter was not guilty of wilful misconduct and consequently not legally responsible for plaintiff's injuries, it would seem to be an unusual method of accomplishing such purpose to ask him repeatedly, after placing him on the stand as a defense witness, to disclose his personal views in the matter; and appellant having done so with full knowledge of the nature of the answer that doubtless would be given, the law will not allow appellant afterwards to complain of the answer, nor to use it to its own advantage, in another action, as a means of defeating the statutory right of the injured party to invoke the benefits of the insurance policy. There is no evidence showing that Puter at any time withheld any fact or circumstance from appellant's attorneys which operated to appellant's disadvantage in preparing its defense to, nor in defending the Puter action, nor is any claim made that as a witness therein he did not truthfully relate the circumstances of the accident.

As said in the case of *Coleman* v. *New Amsterdam Casualty Co., supra,* cited by appellant, cooperation does not mean that the insured is called upon to aid in presenting a sham defense. It means that he shall make a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense. And in our opinion the evidence in the present case is legally sufficient to support the implied findings of the jury and the trial court that Puter did not violate the duty thus imposed upon him.

Some reference has been made also to the testimony given at the present trial by plaintiff on cross-examination, to the effect that shortly after the accident happened she stated to appellant's investigator that Puter was not intoxicated, and that Puter had previously requested her so to state. But nowhere during the course of either trial did appellant intimate that Puter was intoxicated. In fact, it took the opposite position. As shown by the opinion in *Norton* v. *Puter, supra,* appellant argued elaborately against such theory and at the trial of the present action no evidence whatever was introduced to prove otherwise. It must be assumed now, therefore, in the absence of any evidence showing to the contrary, that he was not intoxicated; and in that situation it

cannot be successfully maintained, as appellant now contends, that Puter requested plaintiff to state something that was not true.

The remaining points, being unimportant, do not require special notice.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 23, 1935.