WESTERN CASUALTY & SURETY CO. v. WEIMAR.

No. 8664.

Circuit Court of Appeals, Ninth Circuit.

May 2, 1938.

L. R. Weinmann, Samuel H. Berry, George P. Tobin, and Weinmann, Quayle

& Berry, all of Oakland, Cal., and Herbert Chamberlin, of San Francisco, Cal., for appellant.

J. Hampton Hoge and John E. Gunther, both of San Francisco, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment entered upon a verdict in favor of plaintiff, Weimar, against the defendant insurance company in an action to enforce liability under a policy of liability indemnity insurance.

The complaint alleged the execution and delivery by the company to one Axton Jones of a policy insuring Jones against liability up to $5,000 incurred by him by reason of the operation of an automobile specified in the policy; that, pursuant to the statutory requirement of the state of California, the policy undertook to reimburse, to the extent of the policy limits, any person suffering damage by reason of Jones' operation of the specified automobile for the amount of any unsatisfied judgment such person might secure against Jones.

The complaint proceeds to set out that plaintiff, while riding in assured Jones' automobile some distance south of Alameda, Cal., was injured by the willful misconduct of assured in operating the automobile; that plaintiff brought action for such injuries in the superior court of the state of California and recovered judgment against assured in the amount of $8,000; that writ of execution on the judgment was returned unsatisfied, thereby obligating the company to pay to plaintiff the amount of said judgment up to the policy limit of $5,000.

█ Answering, the company set up as affirmative defenses the allegations that the assured Jones had voluntarily assumed liability to plaintiff and had failed to co-operate with the company in the defense of the suit brought against him by plaintiff Weimar. Either of these defenses, if sustained by proof, would exculpate the company from liability under condition (C) of the policy, which reads: "(C) The Assured shall not voluntarily assume any liability, or settle any claim, or incur any expense, other than for such immediate surgical relief as is imperative at the time

of the accident, except at the Assured's own cost, unless with the written consent of the Company. Whenever requested by the Company the Assured shall aid in effecting settlement, securing evidence and the attendance of witnesses, and shall co-operate with the Company in all matters which the Company deems necessary in the defense of any suit or in the prosecution of any appeal."

The jury returned a verdict for plaintiff in the amount of $5,000, plus interest from the date of recovery of the judgment against assured in the state court. The total verdict, and the judgment thereon, amounted to $5,856.36, plus costs.

The company's first point on this appeal, seasonably preserved by repeated exceptions below, is that the complaint failed to state a cause of action in that it did not adequately allege the performance by the assured and by the plaintiff of conditions precedent to recovery on the policy. This contention is grounded on the failure of the complaint to prove the negative of the assured's voluntary assumption of liability and his lack of co-operation as specified in condition (C), supra.

█ There is no merit in this objection. The requirements imposed by the quoted paragraph are not conditions precedent. They outline conditions subsequent, affirmative matters of defense which the insurer must plead and prove in order to defeat recovery on the policy. Hynding v. Home Accident Ins. Co., 214 Cal. 743, 752, 7 P.2d 999, 85 A.L.R. 13; Panhans v. Associated Ind. Corporation, 8 Cal.App.2d 532, 534, 47 P.2d 791; Norton v. Central Surety Co., 9 Cal.App.2d 598, 601, 51 P.2d 113.

Next the company contends that the evidence conclusively shows that the assured breached the policy (1) by voluntarily assuming liability and (2) by failing to co-operate with the company in defense of the suit brought by plaintiff against the assured. This contention was properly presented to the District Court by motion for directed verdict.

Adequately to evaluate this argument we must review briefly the circumstances of the accident giving rise to this course of litigation.

Plaintiff, Weimar, and assured, Jones, were returning in the small hours of the morning from San Jose, Cal., to Alameda. Jones was driving, Weimar was asleep beside him in the front seat. Weimar's

right arm was hanging outside the right-hand door of the car. Driving conditions were good, the headlights were burning, and the traffic was light. Jones perceived ahead of him on the broad highway, going in the same direction, a truck with trailer, and increased his speed to overtake and pass it. While passing the trailer Jones' car came too close to it and sideswiped it, with the result that the impact severed Weimar's arm at the shoulder.

The plaintiff was a nonpaying guest in Jones' automobile. Occupying such a status, he had no cause of action against Jones under the law of California, unless he could prove that the injury was "proximately resulting from the intoxication or wilful misconduct of such owner, driver or person responsible for the operation of such vehicle." Motor Vehicle Act, § 141¾, 2 Deering's Gen.Laws 1931, Act 5128, p 2520.

The complaint upon which Weimar recovered judgment against Jones in the state court charged the latter with wilful misconduct in that he deliberately and with wanton disregard of consequences approached the trailer from the side, trying to edge his car as near to it as possible without hitting it.

In this action the company contends that Jones voluntarily assumed liability by giving to the attorney for the plaintiff a statement accusing himself of wilful misconduct of the character just described.

It is undisputed that Jones did give to plaintiff's attorney, two weeks after the accident, a written statement as follows:

"Along about the first (1st) part August Harry Weimar and myself were attending a party in San Jose. We had some home brew to drink but neither of us became intoxicated.

"We left the party about 1 o'clock in the morning coming home to Alameda, were driving very fast, around 60 and 65 M. P.H. Harry was asleep beside me. I, myself, became quite drowsy and about that time I saw this truck up in front with a trailer and I thought I would play 'tag' with the trailer and see if I could wake up a little and as it happened I came too close and hit the trailer with my car. Harry had his arm out of the window at the time and trailer hit it and cut it off. Aug. 21, 1933.

"Axton Jones.
"Witness: Marion T. Yuvan."

The reservation of rights agreement executed by Jones and the company, later considered, agreed that Jones had given a similar statement to a law enforcement officer, entitled to inquire about the accident, on the morning on which it occurred. Two days after the accident Jones had given a similar written statement to a representative of the company. He had also made oral statements of like effect to the plaintiff and members of the plaintiff's family, another police officer, and others within a few days of the accident, and long before the state suit was filed.

Unless we can say, as a matter of law, that the quoted written statement given by Jones to plaintiff's attorney made out a complete case of wilful misconduct, we cannot hold, as a matter of law, that Jones voluntarily assumed liability. Conceding that a person, without using the words, "I assume liability" or "I was guilty of wilful misconduct," may accomplish the same result by setting out sufficiently damning facts against himself, we think it was a question for the jury whether that result was achieved by the written statement quoted.

Driving 60 to 65 miles per hour is not necessarily wilful misconduct proximately resulting in the loss of Weimar's arm, within the statute. Explanation may show it may have been no more than a temporary increase to pass the truck and trailer. Becoming drowsy at the wheel is not necessarily such wilful misconduct. "Playing tag" with a trailer on a three-lane highway at a speed of 65 miles an hour sounds highly dangerous, but it is not necessarily misconduct proximately resulting in Weimar's injury. One might use that expression to indicate his difficulty in passing the wandering course of the trailer, or trying to scrape or touch it. The latter alternative would amount to wilful misconduct. The former might be wilful misconduct, might be mere negligence, or might even be an exercise of due care, all depending upon the circumstances. It was an issue for the jury to determine whether the statement given by Jones to plaintiff's attorney was a confession of sufficient misconduct as to amount to a voluntary assumption of liability within the policy provision.

As a second ground urged in support of a directed verdict, it is claimed that the evidence shows conclusively that the assured Jones failed to "co-operate with the

Company in all matters which the Company deems necessary in the defense of any suit or in the prosecution of any appeal."

As we have already indicated, Jones' first accounts of the accident, given shortly after the accident, and to the insurance company within two days, and to plaintiff's counsel two weeks later, were all damaging to Jones and of a nature (e. g. "playing tag") to aid a finding of wilful misconduct on his part.

However, in the state court action against Jones and in this action against the company, Jones has repeatedly testified that he deliberately trumped up a case of wilful misconduct against himself in order to aid his friend Weimar obtain a judgment against the company. Certainly in his sworn testimony in the two court actions Jones co-operated nobly with the company; has, in fact, almost gone out of his way to accuse himself of fraud and collusion in his earlier unsworn statements. His account of the accident given at the trial shows not a scintilla of wilful misconduct nor even of negligence in passing the truck and trailer.

The company contends that it had no knowledge that Jones had given the above-quoted signed statement to plaintiff's attorney two weeks after the accident. It contends that the statement was introduced at the trial by plaintiff's attorney as a devastating surprise to the company's counsel, a thorough-going impeachment of Jones, and a foundation for the jury's verdict against him.

While it is true that the company was not informed by Jones of this particular *written* statement to plaintiff through his attorney, it knew more than five months before the trial started that Jones had given to plaintiff himself, plaintiff's family, and law enforcement officials an account of the accident identical in material content. The essential thing is that the company knew that both plaintiff, his family, and the disinterested officers of the law would establish that Jones had made the statements. That another was made in writing does not seem material.

The trial against Jones commenced on February 25, 1935. Over six months before, on August 2, 1934, in the office of the company's counsel, Jones and the company signed a reservation of rights agreement which, in disclosing to the company the making of these statements to the plaintiff and others, stated: "Whereas, it is admitted and acknowledged by Assured * * * that for the purpose of assisting Harry Weimar in said recovery, Assured delivered to the Company, immediately upon the occurrence of said accident, a false account and report of said accident, in which Assured falsely alleged facts rendering him guilty of wilful misconduct; that Assured repeated and asserted said false account of the accident to said Harry Weimar, members of the latter's family, and to police and law enforcement officers investigating said accident. * * *"

Thus the company was well and thoroughly informed of Jones' prior accounts of the accident to other persons and that they were the same as then given to the company. It also knew that such first accounts differed from what he was going to swear at the trial. Its claim of surprise and lack of co-operation, at least after August 2, 1934, is patently hollow.

We do not see how Jones' failure to inform the company of the particular statement he had written out and given to plaintiff's attorney was a prejudicial lack of co-operation, in view of the disclosures to similar effect made by him in the reservation of rights agreement. The burden is on the company to prove that it was materially harmed by lack of co-operation on the part of the assured. Hynding v. Home Accident Ins. Co., supra; Panhans v. Associated Ind. Corporation, supra; Norton v. Central Surety & Ins. Co., supra.

It is argued that, even though plaintiff's original statements, including the "playing tag" phrase, were seasonably repudiated, and that even though they did not amount to a voluntary assumption of liability, they nevertheless amounted to lack of co-operation because they were deliberate false statements made with a view to trumping up a liability against the company for the benefit of assured's friend Weimar.

We daresay that such fraud and collusion, if proved, would defeat recovery even though plaintiff later repudiated it. The defense here, however, rests upon the company's Olympian assurance that plaintiff told a lie the first time and told the truth later at the trial. These are matters for the jury, not for this court nor for the appellant. Viewed in the light of general probabilities, it is more likely that Jones would tell the true story of the accident to the deputy sheriff the following morn-

ing when the shock of it was fresh in mind than a year or two later when the admission that the first account was true would tend to lead to a verdict against him.

Errors are urged to certain instructions given or refused. The challenged action of the court in this respect is sustained by the principles we have discussed in connection with other assigned errors. We find no reversible error.

Affirmed.