[Civ. No. 3290.   Fourth Appellate District.—May 10, 1940.]

A. C. WRIGHT, Respondent, v. FARMERS AUTOMOBILE
INTER–INSURANCE EXCHANGE et al., Appellants.

W. H. Stammer for Appellants.

Martin C. Thuesen for Respondent.

BARNARD, P. J.—The plaintiff herein was injured while riding in an automobile driven by one Sellers. In a former action this plaintiff recovered judgment against Sellers, which has become final. (*Wright* v. *Sellers,* 25 Cal. App. (2d) 603 [78 Pac. (2d) 209, 213].) Thereafter, this action was brought, based upon that judgment and a policy of indemnity insurance which had been issued to Sellers by these defendants. A jury returned a verdict in favor of the plaintiff, and the defendants have appealed from the judgment and from an order denying their motion for judgment notwithstanding the verdict.

The main contention of the appellants is that the insured (Sellers) violated certain terms of the policy in that he failed to cooperate with them in the preparation and trial of the action, that he failed to give them the fullest information obtainable with respect to the facts surrounding the accident, and that he concealed or misrepresented material portions of those facts. The facts involved on this appeal are fully set forth in a dissenting opinion filed herewith, and need not be here repeated.

It may be first conceded that there is a conflict in the evidence with respect to the correctness and effect of the statement signed by the insured at the request of the insurance adjuster. Sellers denied that this statement correctly set forth the facts as stated by him to the adjuster and testified that it did not contain all of such facts. In that regard a question of fact was presented on conflicting evidence, and the finding of the jury thereon may not be disturbed on appeal.

A different situation is presented, however, by the denials and allegations of the answer which was signed and verified by the insured, taken in connection with the testimony which he gave at the trial of the former action. An answer was prepared in accordance with the facts contained in the origi-

nal statements made by the insured. Sellers refused to sign this answer until certain changes were made and at that time made some modification of his statement of facts. Another answer was then prepared in accordance with the facts as then stated by him, which Sellers signed and verified, and which was filed. ██ Regardless of any question which might have existed with respect to statements of fact as previously made by Sellers, there was and is no room for misunderstanding with respect to the statement of facts then made by him and set forth in the answer which he verified. If we disregard the various conflicting statements made by Sellers as to the speed of his automobile at the time of the accident, the fact remains that he alleged upon his oath that the respondent herein had not remonstrated or objected to the manner in which he was driving his automobile, and denied that he was driving the same at an excessive rate of speed or that the automobile swerved from the road or overturned because of his speed or because of any conduct upon his part. There can be no escape from the legal effect of the statements thus solemnly made by the insured and upon which the insurance carriers were entitled to rely. The verified answer speaks for itself, and there is and can be no question in the evidence with respect to whether those representations of fact were actually made by the insured to his insurers. If those allegations of the answer had been true the insured would have had a substantial defense in the prior action. The insurance carriers were entitled to rely upon those denials and allegations of the answer and were justified in defending the former action in reliance upon the truth of those allegations and in the belief that they would be supported by the testimony of the insured.

It is equally true that there is no conflict in the evidence with respect to the exact testimony which was given by Sellers in the trial of the former action, as shown by the evidence in this case. He there testified that the accident happened as he was going down a slight grade traveling between sixty and sixty-five miles an hour; that he came to a turn; that he "couldn't make the turn" because he "was going too fast"; that "practically immediately" before the accident Wright asked him to slow down; that he told Wright not to worry, "I know this road"; and that he did not slow down. It was largely upon his testimony that this court

affirmed the judgment against Sellers. (*Wright* v. *Sellers, supra.*) In that case we said:

"He was familiar with the road. In the face of remonstrances on the part of plaintiff he drove his car at almost seventy miles an hour into a curve. He said himself that the speed was so great that he could not hold his automobile on the paved portion of the road."

In this testimony the insured materially changed his version of the facts in connection with the accident as theretofore given by him to these appellants and incorporated in the verified answer which he filed in the other action. This evidence was in direct conflict with the allegations of the answer and it effectually destroyed any hope of a judgment in favor of Sellers in that action.

As there is no conflict whatever in the evidence with respect to what was denied and alleged in the answer and concerning the facts as testified to by Sellers at the trial of the former action, it cannot be said that there is any conflict in the evidence with respect to the issue raised in that connection, namely, whether the insured, without misrepresentation, furnished the fullest information obtainable to the insurer and rendered to the insurer all cooperation and assistance in his power. An exactly opposite situation appears without conflict. If Sellers' testimony on the witness stand was not the truth, he was certainly not cooperating. If it was the truth he violated the cooperation clause of the policy by concealing the real facts from the insurer up to the very moment he testified, thus causing the insurer to go to trial under an absolute misapprehension of what the facts were. This could not be other than prejudicial.

We may say here as we said in *Margellini* v. *Pacific Automobile Ins. Co.,* 33 Cal. App. (2d) 93 [91 Pac. (2d) 136]: " . . . there was a violation on the part of the assured of the cooperation clause contained therein which we think brings this case within the principles of the recent case of *Valladao* v. *Fireman's Fund Indemnity Co.,* 13 Cal. (2d) 322 [89 Pac. (2d) 643], and which bars a recovery on the part of the respondent. In that case it was pointed out that it is now definitely settled in this state that in an action of this character the injured person stands in no better position than the assured with respect to the effect of a violation, on the part of the latter, of a cooperation clause in the policy; that a condition of a policy requiring the cooperation and assis-

tance of the assured in opposing a claim made, or an action brought, by an injured party is material to the risk and of the utmost practical importance; that without such cooperation and assistance the insurer is severely handicapped and may be precluded from making any defense; and that the insurer is entitled to know from its assured the true facts concerning the accident, in order that it may determine for itself whether to contest or attempt to settle the claim.''

Except perhaps in the degree of the false swearing of the insured, we cannot distinguish this case from *Valladao* v. *Fireman's Fund Indem. Co.*, 13 Cal. (2d) 322 [89 Pac. (2d) 643, 649], where, in quoting from the opinion of the trial judge, it was said:

''A co-operation clause binds the insured to the exercise of good faith and when he speaks concerning the facts of the accident it must be to tell the truth. To wilfully misstate or conceal facts in such a case is clearly not cooperation or assistance; it is exactly the opposite. Was it, then prejudicial? I see no escape from the conclusion that under all the circumstances here prejudice naturally, inherently and necessarily existed. The insurance company had taken a formal position as to the facts from which it could not recede without great disadvantage. The answer bearing all the forms of verification was on file. . . . When the true facts were disclosed, the company had to exactly reverse its position with regard to essential facts and virtually proclaim their parties and chief witnesses to be liars and wholly unworthy of belief. Practically its only props were struck from under it. Better a great deal that there had been an absolute refusal to tell the facts at all than that it should have been deceived into taking a false position and then suffering the disadvantage and detriment of confessing it, thereby utterly destroying the credibility of the principal witnesses to the facts upon which it relied in defense. I am of the opinion that damage and prejudice inheres in and must be presumed to exist in such a case. Hence it is a matter of law and not of fact; a problem for the court and not for the jury.''

In our opinion, the failure of Sellers to cooperate with the insurers in the defense of the prior action was an established fact with respect to which there was no conflict in the evidence. The insured and the insurers were bound by the

clear provisions of their contract. (*Bachman* v. *Independence Indem. Co.*, 214 Cal. 529 [6 Pac. (2d) 943].) This failure to cooperate and misrepresentation or concealment of facts on the part of the insured were a violation of the insurance contract, and prejudice must be presumed as a matter of law under the rules announced in the cases above cited.

The judgment and order appealed from are reversed.

Marks, J., concurred.

GRIFFIN, J., Dissenting.—I dissent.

Stripped of immaterial verbiage, these are the essential facts: On April 17, 1936, respondent filed an action against Milton Sellers, and on January 14, 1937, a judgment was rendered in that case in favor of respondent and against Sellers in the sum of $1250 and costs. That judgment has now become final. On August 3, 1938, respondent filed this action against appellants on a policy of indemnity insurance insuring Sellers against legal liability imposed upon him resulting from the operation of the automobile in which respondent was injured. Appellants admitted the policy of insurance but denied liability thereunder and alleged that the terms and conditions of the policy had been violated by Sellers in that he had failed to give to them the fullest information obtainable concerning the accident, had failed to cooperate with them in the preparation and trial of said action, and had colluded and conspired with respondent to secure a judgment against himself which appellants would have to pay. The action against appellants was tried before a jury and the above-mentioned judgment resulted. Appellants now appeal upon the claimed ground that the undisputed evidence demonstrates as a matter of law that they were entitled to a judgment in their favor, and upon the further claimed ground that the court committed prejudicial error in ruling upon the evidence and in instructing the jury.

The details of the injury and the facts appertaining to the accident were once before presented to this court for consideration and are fully related in *Wright* v. *Sellers*, 25 Cal. App. (2d) 603 [78 Pac. (2d) 209]. For the sake of brevity we will not repeat them here.

The accident happened on February 26, 1936, and on February 28, 1936, the assured gave a report of the accident to a Mr. McGurl, who was then employed by appellants as a

claims adjuster. The report was taken at Sellers' home while he was in bed suffering from a broken leg and numerous cuts and bruises. Sellers gave McGurl an outline of the facts and then McGurl asked questions of Sellers. McGurl then wrote what he claimed was a correct synopsis of how the accident happened. Each page of the statement was signed by Sellers. Sellers and his brother, testifying as witnesses for respondent at the trial, stated that Sellers did not read the statement and that the statement did not contain the entire conversation. Appellants argue that neither of them testified that Sellers had not made the statements made in the report and that neither of them testified to any fact stated to McGurl which was not contained in the report. This argument is not entirely supported by the evidence for we find from an examination of the record that Sellers testified that the writing did not contain a complete and full statement of what he said to the adjuster. The evidence discloses that he told Mr. McKnight, his counsel, that he could not sign the answer proposed by him for the reason that "at that time I told him that I was going faster than he had in the answer, between—oh, 55 miles an hour or faster, and as far as Mr. Wright not losing any time, I said I could not sign an affidavit to that effect because I knew he had lost time, and as far as Mr. Wright not being injured, I said I could not swear to that because I knew he had been injured, and if he would change these three things I'd be more than glad to sign it." The testimony, further related, is: "Q. Did Mr. McKnight say anything to you about the statement you made to the adjuster? A. Yes, sir. At that time he said, 'How does it happen that you now testify to the fact that you were going faster than you did in your statement?' He said, 'I have that statement here.' At that he got the statement and read it and when he said in the statement, 50 miles an hour, I said, 'That is not what I said at the time the statement was taken.' I said then 55 miles an hour or faster."

The written signed statement given to appellants by Sellers reads in part as follows:

" . . . My name is M. K. Sellers . . . I was driving from Fresno to Placerville to get my wife and child who were staying up there. I had asked Art Wright, . . . who is a patrolman on the Fresno Police force, to go with me for the

ride . . . We had been driving about 50 or 55 m. p. h. all during the trip. The road at this point was oiled about 20 feet wide. It was level and not rough. We were driving on a straight of way. About 6:15 p. m. when I was about 100 to 150 feet south of a curve in the road, about a 10 degree curve to the left, no more, I slowed down 2 or 3 miles an hour, and was going then about 50 m. p. h. or a little less. I was just ready to make this turn when the car hit a chuck hole in the road which I had not seen. I felt the jolt, the car started to go sideways, then went sideways and turned over about 4 times . . . At no time on the trip had Art Wright complained of my driving . . .

"I have read the above four-page statement and it is true."

Respondent testified at the trial of this case and stated that "he was not himself" when the statement was being taken by McGurl. The signed statement of Wright, dated February 28, 1936, reads in part as follows:

" . . . About 6:15 we were going north on Plymouth Road about 2 or 3 miles north of the town of Plymouth. We were going about 55 or 60 miles an hour . . . I looked at Milt and said something to him. He was watching the road. Just at this time something happened. I was not looking at the road so I do not know what started it, but the car swerved sideways to the left and then started to turn over. . . . I think we hit a small slide out on the road, but I am not sure . . . I had not complained at any time about his driving. He is a good driver. Sixty miles an hour was not too fast for that road because it is a good road at that place. . . . Milt had driven well all the way on that trip. . . .

"I have read the above three-page statement and it is true."

After taking these statements McGurl reported their contents to appellants and advised them to close the case inasmuch as the facts disclosed no liability on the part of Sellers for the accident. Suit was filed by respondent against Sellers on April 17, 1936.

Wright alleged in his complaint that Sellers drove his automobile in excess of 55 miles an hour with a reckless disregard of probable consequences, and that as a result thereof the automobile swerved from the road and overturned. An answer of Sellers to the complaint was drawn by a Mr. McKnight, his attorney, in accordance with the information previously furnished in the statement by Sellers. McKnight

called Sellers on the telephone to ascertain the exact speed to allege in the answer. The conversation was as follows:

(Testimony of Mr. McKnight): "I told him that Mr. Wright had alleged in the complaint that he was driving— had been driving his automobile in excess of 55 miles an hour, that I had his statement in which he had stated that he had been driving at less than 50 miles an hour and that it was very important to have the exact speed that he thought he was driving so that we could allege it in his answer, and asked him what that speed was. Mr. Sellers told me that the complaint was right, that he had been driving 55 miles an hour, maybe a little more. I told him that I had read his statement which he had given to the company, which stated that he had been driving less than 50 miles an hour, and asked him if he could explain the discrepancy. Well, he said he had slowed down a little bit just before the accident happened, but that he was driving 55 miles an hour."

During the preparation of the answer Sellers challenged the written report to the company by stating that Wright had mentioned his speed prior to the accident and when the statement to the effect that Wright had at no time complained of his driving was read to him, he explained that respondent had not *objected* to his driving, but had simply *mentioned* his speed. The verified answer signed and filed, denied that he, Sellers, was driving in excess of 55 miles an hour, or that he was driving at an excessive rate of speed, or that the automobile swerved from the road or overturned because of his speed or any conduct on his part, and alleged that respondent failed to remonstrate or object to the manner in which the defendant conducted himself in the operation of his automobile.

In the preparation of the answer Sellers refused to sign the answer as prepared. He stated then that he knew Wright was injured; that he had lost time from his work; and would not deny these allegations in the complaint. He then objected to the allegation in the answer to the effect that Wright had at no time objected to the manner in which he was driving his automobile and stated that "Mr. Wright did not object to any conduct or did not object to the manner in which I was driving but did *mention* my speed." Counsel then explained to Sellers that he did not know the extent of the injuries or the amount of time lost and he would therefore deny those allegations on information and belief. Coun-

sel then filed the answer denying the allegations as heretofore related.

On September 29, 1936, Mr. Stammer, counsel for appellants, took respondent's deposition, and although respondent Wright, in his complaint had placed Sellers' speed "in excess of 55 miles an hour", and although it was claimed that he had said in his statement of February 28th that he had not at any time complained about Sellers' driving and that the speed was not too fast for the road, he testified in his deposition that Sellers was driving between 60 and 65 miles per hour and that he had objected to this speed on two different occasions. On January 12, 1937, the day before the trial of *Wright* v. *Sellers, supra,* McKnight again discussed the facts with Sellers in connection with respondent's deposition. McKnight took notes of that discussion and those notes were read into evidence at the trial of the present case. At that time Sellers, it was claimed, told McKnight that he was driving 55 to 60 miles per hour but did not believe that speed dangerous; that respondent Wright complained of his speed on two occasions; that he could not say what caused the accident and did not know what caused the car to go out onto the shoulder; and that respondent never blamed him for the accident. McKnight also testified that he told Sellers at that time "about what would happen under his policy if he insisted on changing his story, and I asked him at that time if he had ever talked to either Mr. Wright or Mr. Thuesen . . . or about the case in any way; and he said he had discussed the facts with Mr. Wright" but that he never had discussed what his testimony was going to be in the case. Sellers said "Well, he thought the insurance company should pay (Wright) something because he was injured." Wright also testified that he had never discussed with Sellers what his testimony was going to be.

At the trial of *Wright* v. *Sellers, supra,* respondent Wright further testified that he looked at the speedometer just before the accident and that it registered nearly 70 miles per hour. When called to the witness stand by respondent under section 2055 of the Code of Civil Procedure, Sellers testified that he was driving about 60, from 60 to 65 miles per hour; that Wright asked him to slow down and he did; that he was driving around 60 to 65 miles per hour after he left Plymouth and just prior to the accident Wright asked him

to slow down, but he did not do so; that he was unable to keep the automobile on the paved portion of the road because he "was going too fast". Thus it will be observed, as argued by appellant, that at the trial of the case respondent stated the speed to be nearly 70 miles per hour as against "in excess of 55 miles per hour" as alleged in his complaint, and testified that he objected to that speed on two occasions as against his claimed statement on February 28th that he had never complained at any time about Sellers' driving, that Sellers was a good driver and had driven well all the way, and that his speed was not too fast for that road. It is to be further noted that Sellers, at the trial, testified that he was driving from 60 to 65 miles per hour as against his disputed signed statement of February 28th that he was driving less than 50 miles per hour; and that respondent objected to his speed on two occasions as against his first claimed statement that respondent had made no complaint of his driving, and that the accident occurred because he was driving too fast, as against his denial in his answer that the accident occurred because of his speed and his previous statement that the car turned over when he hit a chuck hole in the road which he had not seen. The testimony of Sellers was given just before the noon recess on the first day of the trial. At recess McKnight explained to Sellers that the company would no longer accept liability under the policy on account of his conduct, statements and testimony related. Appellants served Sellers with a formal reservation of rights. Sellers thereupon spoke to respondent's attorney and was told by him that he could not advise him one way or other. Afterwards Sellers asked counsel for appellants herein to go on with the trial, apparently under the reservation of rights. It does not appear that any attempt was made to collect the judgment against Sellers because he had no "money with which to pay it".

It had been recently stated that as a general rule where the uncontradicted evidence shows that an assured fails and refuses to give to his insurance company in good faith a frank, fair and honest disclosure of material facts connected with the accident, he is guilty of a failure to cooperate, and if that uncontradicted evidence shows a substantial and wilful breach by the assured of the material cooperation clause of the policy it is presumed as a matter of law to be prejudi-

cial. (*Valladao* v. *Fireman's Fund Indemnity Co.*, 13 Cal. (2d) 322 [89 Pac. (2d) 643] ; *Margellini* v. *Pacific Automobile Ins. Co.*, 33 Cal. App. (2d) 93 [91 Pac. (2d) 136].) The insurer is entitled to know from its assured the true facts (of which he may have knowledge) underlying an accident and upon which the insured person bases his claim in order that it may determine for itself, in the light of such information, whether it should contest or attempt to settle the claim. It is generally established that what constitutes cooperation (or lack of it) on the part of the assured, within the meaning and effect of a cooperation clause, is ordinarily a question of fact. This is so because a dispute normally exists as to the actual statements of the assured in the premises or because of the existence of an uncertainty as to the intent or motive underlying his statements or conduct.

The policy of insurance upon which this action was brought contains the following provisions:

"4-A: Upon the occurrence of an accident or claim covered by the policy involving bodily injuries or death to persons . . . the insured shall forthwith give written notice thereof, with the fullest information obtainable at the time, to the Home Office . . . The insured shall at all times render to the Exchange all cooperation and assistance in his power . . . The entire policy shall be void if the insured or his agent has concealed or misrepresented in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or, if the insured or his agent shall make any attempt to defraud the Exchange, either before or after the loss."

The facts and circumstances under which the insurer may rightfully claim lack of cooperation and assistance, or the concealing or misrepresentation of material facts and circumstances concerning the subject of the insurance in all cases cannot be measured by any legal standard or weighed by any set of legal scales. In applying the rule, consideration must be given to the facts and circumstances of each case as presented. It is true that in *Valladao* v. *Fireman's Fund Indemnity Co., supra,* the Supreme Court sustained the judgment of the trial court which held that the wilful misrepresentation to the insurer of the identity of the operator of the truck involved in the accident constituted a breach of the cooperation clause of the policy. And this court in

*Margellini* v. *Pacific Automobile Ins. Co., supra,* where it appeared that the insured's wife, who drove the automobile involved in the accident and who was already covered by the policy, not only failed to make a report of the accident but concealed her whereabouts despite repeated and prolonged efforts to locate her, and there was a failure on the part of the insured and his wife to cooperate with defendant by making a fair and frank disclosure of such information as they possessed concerning the accident, held that there was a breach of the cooperation clause of the policy. And in *Hynding* v. *Home Acc. Ins. Co.,* 214 Cal. 743 [7 Pac. (2d) 999, 85 A. L. R. 13], the failure of the insured to testify, under the circumstances there related, was held to be a breach of the condition. (See, also, *Purefoy* v. *Pacific Automobile Indemnity Exch.,* 5 Cal. (2d) 81 [53 Pac. (2d) 155], and cases cited.) On the other hand, we find in *Panhans* v. *Associated Indemnity Corp.,* 8 Cal. App. (2d) 532 [47 Pac. (2d) 791], the failure of the insured to attend the trial under the circumstances there related did not constitute, as a matter of law, a breach of the cooperation clause which was prejudicial, and the trial court was affirmed in so holding. The facts and circumstances related in *Norton* v. *Puter,* 138 Cal. App. 253 [32 Pac. (2d) 172], and *Norton* v. *Central Surety & Ins. Co.,* 9 Cal. App. (2d) 598 [51 Pac. (2d) 113], are somewhat similar to the facts in the instant case. In those cases the speed of the car was stated to be 55 miles per hour and the driver was attempting to negotiate a curve in the road under very dangerous conditions resulting in injury to the guest. The facts there set forth were held to constitute wilful misconduct and the acts of noncooperation of the insured involved his failure to appear at a specified time to review the facts of the case with counsel for the insurance company and his general conduct after an altercation with him, and the insured's apparent desire on the trial of the action that his guest should recover. The judgment against the insurer was sustained and the court held that the evidence was sufficient to support the implied findings of the jury and the trial court that the insured did not violate the duty imposed upon him. We, therefore, are confronted again with what was heretofore denominated a "borderline case". From the evidence before us it is clear that Sellers made timely objection to the insurer's counsel of the rate of speed set forth in the statement prepared by the insurance adjuster,

and claimed that his speed at the time of the accident was "55 miles per hour or faster". Based upon the findings of the jury I am impelled to accept the interpretation that the jury therefore believed that the original statement in reference to the speed of the car was not the statement made to the adjuster.

The insured's statement prior to trial that he was going "55 miles an hour or faster", and his testimony at the trial that he was driving "about 60 miles an hour, between 60 and 65" may not have indicated to the jury any particular material variance. The original signed statement of Sellers related that the guest had not *complained* of his driving. He informed counsel for the insured that the statement was incorrect in this, that although he did not complain, "he did mention his speed".

Regardless of personal views of the weight of the evidence and the correctness of the jury's determination, we should be bound by the time-honored rule that in reviewing the facts of a case, when there is some dispute or conflict, an appellate court must accept those as true which tend to support the verdict and judgment, and must resolve all conflicts in the evidence in favor of the successful party in the lower court. (*Wright* v. *Sellers, supra.*) Guided, therefore, by this rule, the jury could have concluded that the statement of Sellers as to the rate of speed and the fact that Wright had not complained of his driving, was an erroneous recordation of what he actually told the insurance adjuster. The evidence would justify the conclusion, then, that in fact he did tell him he was traveling "in excess of 50 miles an hour" and that he did "mention his speed". I am satisfied that the evidence appearing in the record is legally sufficient to support the conclusions of the jury and trial court that the alleged acts and omissions complained of either were not substantial variances or were of such a nature as did not operate to appellants' prejudice, in preparing or defending the case, or otherwise.

The written statement of Wright, no doubt, was or could have been used to impeach his testimony, but under the contract of insurance there was no legal obligation of respondent Wright to cooperate with the insurer. His statement of the accident and any change in his testimony would therefore be immaterial to appellants' defense as alleged unless a con-

spiracy could be shown. The jury resolved any conflict in the evidence on this charge in favor of respondent and against appellants and there is evidence to support the finding. It is our duty on appeal to indulge in all reasonable inferences to support the findings and judgment. (*Medberry v. Olcovich*, 15 Cal. App. (2d) 263 [59 Pac. (2d) 551, 60 Pac. (2d) 281].)

Appellants endeavored to attack the judgment and finding of the jury in *Wright* v. *Sellers, supra,* by attempting to show in the instant case that Sellers, as a matter of fact, was not guilty of wilful misconduct. They read Sellers' testimony given at the former trial, which was received in evidence, and then attempted to read to the jury a certified copy of the opinion of this court in that case, which was stipulated into evidence along with the entire transcript and record. The finding of wilful misconduct by the jury in *Wright* v. *Sellers, supra,* was conclusive as to that question alone. The reasons given by this court on appeal for sustaining the verdict and judgment in *Wright* v. *Sellers, supra,* although set forth in the opinion, were not material to the cause on trial in the instant case. Although the copy of the decision was received in evidence, under the circumstances related, it was otherwise established that the judgment in the case of *Wright* v. *Sellers, supra,* was affirmed on appeal. Therefore the trial court was not obliged, in the orderly conduct of the trial, to listen to counsel read immaterial matters to the jury which would not tend to prove or disprove any of the issues involved. I would therefore conclude that the trial court committed no error in so ruling.

Finally, appellants complain of the failure of the trial court to give their instruction to the jury which was to the effect:

"That the judgment in the case of *Wright* v. *Sellers* was only an adjudication between the plaintiff and Mr. Sellers that Mr. Sellers was guilty of wilful misconduct under the facts as they were testified to at that trial, and as against the defendants in this case that judgment is not an adjudication that Mr. Sellers was actually guilty of wilful misconduct in the driving or operation of his automobile. . . . Therefore, if you are convinced from the evidence produced in this case that Mr. Sellers was not actually guilty of wilful misconduct and that the judgment in the case of *Wright* v. *Sel-*

*lers* resulted from lack of cooperation on the part of Mr. Sellers or from collusion between Mr. Sellers and Mr. Wright, then you may find that the conduct of those parties prejudiced these defendants in the trial of that action." (Citing sections 1908 and 1910, Code Civ. Proc.)

The court, however, did give the following instruction in reference thereto:

" . . . The law under which the policy was issued, and the policy itself, give a right of action against the defendant insurance companies herein to plaintiff herein, subject to any legal defense. In this action the correctness of the judgment in the damage suit cannot be questioned."

This was followed by the following instructions:

"You are instructed that the judgment in the case of *Wright* v. *Sellers* introduced in evidence herein is not an adjudication of the liability of the defendant in this case under the policy issued by it to Milton K. Sellers. The judgment in *Wright* v. *Sellers* determined only that the plaintiff here was entitled to recover from Milton K. Sellers the sum of $1250.00, and his costs of suit. Performance of the policy, which is the subject matter of this action, was not an issue in the action of *Wright* v. *Sellers*. You are, therefore, not bound in your deliberations as to the performance or nonperformance of the insurance contract by the judgment in *Wright* v. *Sellers*, but you are to determine the issue of performance or nonperformance of the contract upon all of the evidence introduced in this action."

And after reading the section of the policy heretofore quoted reciting the conditions under which the policy would be void, the court gave the following:

"If you find from the evidence that said M. K. Sellers did fail and refuse to cooperate with the defendants and to assist defendants in the preparation and trial of said action, and that he concealed and misrepresented material facts and circumstances concerning the accident, and that this conduct on his part was wilful and intentional and constituted a material breach of the contract *or* insurance resulting in prejudice to the defendants, then your verdict in this case should be in favor of the defendants. . . . "

And further stated:

"If you find from the evidence that M. K. Sellers and plaintiff, with intent to defraud said defendant . . . did col-

lude and conspire together and agree to conduct themselves in the preparation and trial of said action, and to testify in said action, so as to secure a judgment therein in favor of the plaintiff against said M. K. Sellers, and that pursuant to said collusion, conspiracy and agreement, said plaintiff and said M. K. Sellers did conduct themselves in such a manner that plaintiff did secure said judgment against said M. K. Sellers, and that such conduct on the part of said parties constituted a fraud against the defendants and was a material breach of the contract of insurance, resulting in prejudice to the defendants, then your verdict in this case should be in favor of the defendants. . . . ''

The court further instructed:

'' . . . You are not to give a verdict in favor of the defendants, unless you find by a preponderance of the evidence that M. K. Sellers failed deliberately or negligently in some material and substantial regard to do the things required to be done by him, and that such failure resulted in prejudice to the rights and interests of the insurance companies. No merely formal or technical breach of the policy by M. K. Sellers would give the right of cancellation to the insurance companies, unless it caused or was liable to cause substantial prejudice to the rights of the insurance companies.''

It is argued that these instructions placed upon appellants the burden of proving substantial prejudice, and left to the jury the power to determine whether an actual failure to give a true report to appellants or to cooperate in the trial resulted in prejudice to appellants and that under the facts presented, prejudice must be presumed and even under the contradicted facts, the insurer was not obliged to affirmatively show that prejudice resulted from a breach of the cooperation clause. It is therefore contended that if a showing of prejudice is not required, and prejudice is to be presumed, the above instructions given by the court are in error. In view of the expression by the court in *Valladao* v. *Fireman's Fund Indemnity Co., supra,* ''In declining to now definitely determine whether the insurer must make a showing of prejudice resulting from breach of the cooperation clause by the assured, we do so for reasons similar to those announced in *Purefoy* v. *Pacific Auto. Indem. Exch.,* 5 Cal. (2d) 81, 87 [53 Pac. (2d) 155],'' a consideration of the challenged instructions becomes important.

It seems to me that the question whether the fact that the insured in his report varied his speed a matter of 5 to 10 miles at a given point from that related on the witness stand, constituted a misrepresentation of a material fact under the circumstances should be left to the determination of the jury. This same rule would likewise apply to the variance between the statements and the testimony that he had "mentioned his speed" and that on two occasions he had *objected* to his speed. It should likewise follow that where, under the evidence, it cannot be determined as a matter of law that some material and substantial prejudice resulted, the question then becomes a matter for the determination of the jury under proper instructions.

In *Panhans* v. *Associated Indemnity Corp., supra.* the court upheld an instruction to the effect that in order to relieve itself of responsibility under the policy the insurer must show that the breach, if any there was, affected a material condition of the policy, and that the breach operated to the substantial prejudice of the insurance carrier. A petition for hearing by the Supreme Court was denied. Likewise, in *Norton* v. *Central Surety & Ins. Co., supra,* the court stated:

"The issue of whether there has been a lack of cooperation on the part of the insured sufficient to constitute a breach of the policy is one of fact (citing cases); and it appears to be well settled that the violation by an insured of the conditions of a clause of a policy such as the one here involved is not a valid defense against the injured party unless in the particular case it appears that the insurance company was substantially prejudiced thereby. (Citing cases.) Furthermore, the burden of proving the affirmative of both of the above issues (breach plus substantial prejudice) is obviously on the insurer."

There was a substantial conflict in the evidence as to whether there was a lack of cooperation, also, a conflict as to whether appellants could have been prejudiced. There was ample evidence, both positive and inferential, to sustain the finding of the jury. Therefore, in the present case, the implied adverse findings of the jury on said issues, as well as those by the trial court in ruling on the motion for new trial, should be conclusive on this appeal.

There is no merit in the remaining points made by appellants, including those relating to the instructions.

In my opinion the judgment should be affirmed.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 8, 1940. Carter, J., voted for a hearing.