SHANNON, Chief Judge.
Appeal in this case was improvidently taken to the First District Court of Appeal. It was transferred to this court and assigned number 1965. In the meantime, the appellant’s attorney filed a notice of appeal to this court, and it was given number 1958. Thus, they are the same case.
The appellant, plaintiff in the court below, filed its complaint for declaratory relief against the appellees, defendants below, and against a number of plaintiffs who had filed damage suits against the appellees in another action.
The chancellor denied plaintiff’s motion for summary final decree and entered a summary final decree in favor of the defendants.
There is considerable documentary evidence in the record, including the insurance policy which plaintiff had issued to the defendant. This insurance policy is what is known as a liability policy. Among other provisions of the policy are these:
“2.1. This policy does not apply * * * to bodily injury to * * * any employee of the insured while engaged in the employment * * * of the insured * * *
“2.2. The insured shall cooperate with the Company, and upon the Company’s request * * * shall assist in * * * securing and giving evidence * * * and in the conduct of suits.
“2.3. No action shall lie against the •Company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy.”
In its complaint the plaintiff charges that on July 7, 1955, a motor truck of the defendant was wrecked and certain persons in said truck were injured; on August 15, 1955, the plaintiff took a written statement from one of the Lingles, who was handling the entire affair for the corporation. That statement, among other things, contained the information that the injured parties were employees of the Lingle Fruit Corporation. Just a few of the sentences in the statement will be sufficient to show this, as:
“ * * * The crew was not charged anything for transportation and they were going to start to work for me immediately upon arriving in Marion. * * * My work for them as cherry pickers ended as of Aug. 4, 1955 and they are now going to start working at Raemere Farm Products tomorrow. * * * I have also advanced some of these people some expense money while they were laid up waiting to return to work and I feel that I have these people pretty well all lined up and settled down so that they are taken care of money-wise for the time being & I plan to make a report to the Florida Industrial Commission of each one of these injured parties and I will attend to this matter immediately. * * * I could go to each one of these injured people that are now back working for me here and secure releases from them by payment to each one for $100.00 or some such nominal amt. * * * ”
There are several other references to these people working for him in the statement, but the statement as a whole very definitely states that these people were his employees at the time and hence, Lingle, or the Lingle corporation, planned to make a report to the Florida Industrial Commission. The policy excluded any employees of his, so Glens Falls Indemnity Co. did not inves *80 tigate any further. Common-law suits were filed by the injured persons against the Lingles, and Others, during the early part of 1958. The defendant maintained that the plaintiff had notice that the parties were maintaining that they were not the .employees of Lingle as early as March 27, 1956. We are advised that the Florida Industrial Commission denied the claims, but the record of those proceedings are not a part of this record and so we cannot consider them. While the common-law suits for the various parties were pending, the plaintiff’s attorneys, who were in charge of the defense for the Lingles, under reservation of rights notice, had filed an answer setting up, among other things, that those plaintiffs were employees of the corporation at the time of the injuries. The plaintiffs in those suits filed various interrogatories to the Lingles. The attorneys for Glens Falls prepared related answers to the interrogatories on the basis of the statement given by H. G. Lingle and sent the answers to him for execution. He did not sign them, but employed his own attorney to re-draft the answers and as thus re-drafted were filed in the common-law actions by some person other than the attorneys for Glens Falls. After seeing those answers the attorneys for Glens Falls took Lingle’s deposition. In the deposition Lin-gle made statements which are materially variant from the written statement he gave on August 15, 1955. In other words, in his statement of August 15, 1955, Lingle had said that these persons who were suing were his employees. By his deposition he says they are not his employees. This is the particular point about which this appeal is concerned. Under his statement of August 15, 1955, Glens Falls was justified in not investigating further. Under his answers to the depositions, over two years later, they were not his employees, thus, making Glens Falls his insurer for their protection.
Glens Falls presents its appeal in the form of two points: 1) the Lingles did not cooperate with Glens Falls as required by the policy; and 2) the Lingles’ lack of cooperation with Glens Falls entitled it to a summary decree declaring that the policy did not cover the injuries sued for in the common-law actions.
In the briefs of the various parties we find cases holding both ways, but we further find that in cases where there is no question of the facts, and the facts themselves, plainly show that the statement first given by an insured is material, and his later repudiation of that statement shows that he expects to gain an advantage by such repudiation, the insurer is justified in denying coverage.
There are no Florida cases exactly in-point, although several are cited to us. State Farm Mutual Automobile Insurance Co. v. Ranson, Fla.App. (2d Dist.) 1960, 121 So.2d 175, 180, is a case of delayed notice. In that case the insured had an accident with his automobile on December 12, 1955, and he notified the company in or about March, 1957, although the insured knew on February 6, 1956, that he had a slight accident; that there was no intention at all on the part of the insured to keep evidence of the accident from his insurance carrier. In writing the opinion for the court Chief Judge Allen stated:
“The purpose of a provision for notice and proofs of loss is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it. In the absence of a statute on this subject, provisions in the insurance contract requiring notice, and proofs of loss are generally held to be valid and binding. See 29A Am.Jur.Insurance, sec. 1374.
j{i j}« % i¡<
“Aside from the majority of holdings, denying recovery where the condition precedent of notice has not been complied with, the author of the annotation in 18 A.L.R.2d 441, at page 454, cited numerous cases holding either expressly or by implication that a policy requirement as to giving notice and *81 forwarding of suit papers is a condition precedent even if the policy does not contain an express statement to this effect, and to deny recovery under the policy in the case of noncompliance with such requirement.”
In 6 Blashfield, Cyc. Auto. Law and Practice, Sec. 4059, pp. 71 et seq., the rule is laid down as:
“Under such a provision, insured is hound to co-operate to the fullest with insurer and to abide by the terms of the contract both in letter and spirit, or, at least, may be held to reasonably strict compliance with its terms, * *
“In the absence of waiver or es-toppel, failure to observe such a requirement will defeat recovery on the policy, and justifies the insurer, if he so elects, in treating the policy as broken at the time of the breach of condition, and in cancelling the policy. * * *
“Under and by virtue of the cooperation provision, the insurer is entitled to a truthful statement by the insured of the cause of the accident, and other facts in connection therewith in order that the company may determine for itself whether or not to contest the claim; and a material breach of such a condition is frequently shown by the insured’s refusal to give the company whatever information he has respecting the claim which has been filed against him, or where he wilfully misinforms the company concerning essential facts.”
Appleman lays down the law as being almost identical with the statement in Blash-field. See 8 Appleman, Insurance Law and Practice, Secs. 4472 and 4773, pp. 152 et seq.
Counsel for neither party has found a Florida case on the particular point with which we are here concerned, nor have we through our own research, and hence, we shall refer to cases from other jurisdictions. Keeping in mind that by the difference in his two statements Lingle has changed the: liability to one coming under the policy from one where the policy did not apply, in Ocean Accident & Guarantee Corporation v. Lucas, 6 Cir., 1934, 74 F.2d 115, 98 A.L.R. 1461, the court had before it the problem of variance in statements made by the insured. In affirming a judgment adverse to the insurer, the court said, 74 F.2d at page 117:
“ * * * Obviously the common end set forth in this contract as to statements was not that the assured, regardless of truth, should establish non-liability for himself or for the company. It was that the facts of the accident should be fairly, fully and accurately disclosed. As Mr. Justice Cardozo states in Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443, cooperation means ‘that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense.’
* * * * * *
“If lack of cooperation under such a policy is found to exist upon the sole ground of variance in statements, that variance must be not only material, but conscious. * * * ”
In the Lucas case above there is cited the case of Coleman v. New Amsterdam Casualty Co., 247 N.Y. 271, 160 N.E. 367, 369, 72 A.L.R. 1443, wherein, among other things Chief Justice Cardozo had this to say:
“* * * The argument misconceives the effect of a refusal. Co-operation with the insurer is one of the conditions of the policy. When the condition was broken, the policy was at an end, if the insurer so elected. The case is not one of the breach of a mere covenant, where the consequences may vary with fluctuations of the damage. There has been a failure to fulfill a condition upon which [the] obligation is dependent.”
*82 The exact point that we have was decided in Home Indemnity Co. of New York v. Standard Acc. Ins. Co., 9 Cir., 1948, 167 F.2d 919, 924. In that case the motorist insured with the Home Indemnity Co. of New York gave a statement to Home which exonerated the insured and Home from liability. Later, after suit was brought, the insured changed his statement to one of liability against Home. The Court, in its opinion, said, in part:
“Truthfulness seems to be the keystone of the co-operation arch. The insured must tell his insurer the complete truth concerning the accident, and he must stick to this truthful version throughout the proceedings. He must not embarrass or cripple his insurer in its defense against a civil suit arising out of the accident, by switching from one version to another. He must not blow hot and cold to suit his personal convenience.
^ * % * * *
“ ‘The company is entitled, however, to an honest statement by the insured of the pertinent circumstances surrounding the accident, as he remembers them. Lacking that, the Company is deprived of an opportunity to negotiate a settlement, or to defend upon the solid ground of fact. Nothing is more dangerous than a client who deliberately falsifies the facts.’ (Emphasis supplied.)”
In Ford v. Providence Washington Ins. Co., 1957, 151 Cal.App.2d 431, 311 P.2d 930, 935, the court had this to say:
“The insured is required to give a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine if there is a defense or whether the insurer should settle. * * * ‘Truthfulness seems to be the keystone of the cooperation arch. The insured must tell his insurer the complete truth concerning the accident, and he must stick to this truthful version throughout the proceedings.’ ” (Emphasis by the Court).
So, also in Wright v. Farmers Automobile Inter-Insurance Exchange, 1940, 39 Cal.App.2d 70, 102 P.2d 352, 354, the court had this to say:
“ * * * If Sellers’ testimony on the witness stand was not the truth, he was certainly not cooperating. If it was the truth he violated the cooperation clause of the policy by concealing the real facts from the insurer up to the very moment he testified, thus causing the insurer to go to trial under an absolute misapprehension of what the facts were. This could not be other than prejudicial.”
A particularly instructive case is United States Fidelity & Guaranty Co. v. Von Bargen, 1959, 7 A.D.2d 872, 182 N.Y.S.2d 121, 123, affirmed 7 N.Y.2d 932, 197 N.Y.S.2d 736, 165 N.E.2d 579, wherein an insurance covered automobile owned by the named insured was driven by his fifteen year old son when an accident occurred. On August 2, 1955, both the insured and his son gave written statements to the insurer that the son had taken and had driven the automobile without insured’s permission. Acting on this, the insurer disclaimed liability with regard to the son and in actions brought by persons injured in the accident appeared for the insured, but not for the son. In April, 1956, both the insured and the son stated that the son had been driving the car with the permission of the insured and thereupon the insurer served notice declining coverage because: 1) of the contradictory statements; and 2) the insured’s lack of cooperation, the insurer having been prejudiced in the handling of claims and the law suits arising out of the accident. Upon the insurer’s declaratory suit the trial court held that the insurer’s disclaimer was improper, but, upon appeal, the appellate court reversed, and stated that if insured failed “to make a fair and truthful disclosure which would enable the insurer to *83 determine whether there was a genuine defense, there was a breach of the covenant for co-operation; * * * ” that if the first statement made to insurer were true and later the insured and son gave false testimony to the aid of the plaintiffs in the negligence actions, “there was a cessation of the co-operation which was required by the contract * * * ”
There being no evidence, no statements, affidavits or depositions to contradict the point with which we are concerned, we hold that the trial court was in error in granting the defendant a summary judgment, when, as a matter of law, he should have granted a summary judgment for Glens Falls Indemnity Co. We must reverse.
Reversed.
ALLEN and KANNER, JJ., concur.