192 So.2d 59 (1966)
The AETNA CASUALTY & SURETY COMPANY, a Connecticut Corporation Authorized to Do Business in the State of Florida As an Insurer, Appellant,
v.
Sherman V. MILLS, Appellee.
No. 66-385.
District Court of Appeal of Florida. Third District.
November 22, 1966.
Rehearing Denied December 13, 1966.
Blackwell, Walker & Gray and James E. Tribble, Miami, for appellant.
Wolfson & Diamond, Miami Beach, and Howard L. Silverstein, Miami, for appellee.
Before HENDRY, C.J., and CARROLL and BARKDULL, JJ.
HENDRY, Chief Judge.
Plaintiff, Aetna Casualty & Surety Company, appeals from an interlocutory decree in a declaratory decree action wherein it was held that the defendant, Sherman V. Mills, was covered under a policy issued by plaintiff. Plaintiff also appeals from an interlocutory decree taxing attorney's fees. Jurisdiction was retained by the chancellor to determine the amount of damages.
*60 Plaintiff issued to the defendant its policy of non-ownership automobile liability insurance. The policy covers only vehicles which are not owned by the insured or any relative resident in the same household. The policy contains a standard assistance and cooperation clause and an uninsured motorist endorsement.
On April 26, 1964, the defendant was involved in a motor vehicle collision while driving a vehicle owned by his brother Theodore Roosevelt Mills, Jr. Written notice of intention to proceed under the uninsured motorist provision was given to the plaintiff on June 16, 1964.
On June 30, 1964, the investigation of the claim was begun by William McDermott, a claim representative employed by the plaintiff. Mr. McDermott testified that he obtained a copy of the official police accident report and attempted to contact all of the witnesses within two weeks from the time he was assigned the claim. He was unable to contact either the driver or the three passengers of the other vehicle involved in the collision. He did contact the passenger in defendant's car and one other witness. He was able to verify the fact that the other driver was an uninsured motorist. On September 24, 1964, Mr. McDermott interviewed the defendant in the presence of defendant's attorney and obtained a sworn statement in which the following questions and answers concerning defendant's brother appear:
"Q. Where did he live at the time of the accident?
"A. I don't know the address right off.
"Q. Did he live at the same place you did?
"A. Well, I guess that address, but it was at the rooming house. He lived with me. He and his wife were separated. They are together now.
"Q. Just to clarify a point. Was he residing with you at your home at the time of the accident?
"A. Yes."
The defendant had been undergoing medical treatment and medical reports were furnished to the plaintiff. On November 10, 1964, a letter was sent to the defendant indicating that the plaintiff had arranged an appointment for him to see a doctor.
Mr. McDermott testified that on or about November 20, 1964, he talked with defendant's attorney by telephone and denied coverage under the policy. By letter dated January 18, 1965, the plaintiff confirmed the denial of coverage on the ground that the policy endorsement excluded coverage to the insured occupying an automobile owned by any relative resident in the same household.
By letter dated August 9, 1965, defendant's attorney notified plaintiff that his investigation determined that defendant's brother was not in fact a member of the household in which defendant resided at the time of the accident although he listed that address for convenience.
On January 3, 1966, following a demand for arbitration, plaintiff filed this action for declaratory relief and to stay arbitration. On February 9, 1966, defendant gave a deposition in which he stated that his brother was not residing with him at the time of the accident. This testimony was repeated at trial with the explanation that he misunderstood or made a mistake when giving the sworn statement to the contrary.
Plaintiff contends that the chancellor erred when finding that there was no prejudicial breach of the cooperation clause. It is also contended that it was error to tax attorney's fees against the plaintiff.
The chancellor found that the defendant's brother was not residing in the same household as defendant at the time of the accident. The plaintiff argues that therefore, it follows, that defendant's sworn statement was false and constituted a material breach of the cooperation clause which was prejudicial as a matter of law. In this *61 regard plaintiff cites the case of Glens Falls Indemnity Co. v. Lingle, Fla.App. 1961, 133 So.2d 78 wherein the second district held as a matter of law that the insurer should have been granted a summary judgment. In the Lingle case, the insured gave a written statement one month after an accident which contained the information that the injured persons were his employees thereby excluding coverage. The insurer did not investigate any further. By deposition taken over two years later, while common law suits filed by the injured persons were pending, the insured stated they were not his employees, thus making the insurer liable.
In a later case, American Fire & Casualty Company v. Collura, Fla.App. 1964, 163 So.2d 784, 790, the second district rejected an insurance company's effort to use the Lingle decision as precedent requiring it to hold that an insurer may avoid liability under its policy by merely showing a violation of one of the condition precedent clauses without a further showing of how such violation prejudiced the insurer. The court, at page 794, held that the rule in Florida is that the insurer must show that the lack of cooperation was material and that the insurer was substantially prejudiced in the particular case by such lack of cooperation.[1]
The Lingle case is similar to the one before us in that the first statement made by the insured indicated to the insurer that it would not be liable. Under the cooperation provision the insurer is entitled to truthful statements by the insured of the cause of the accident and other facts in connection therewith. Thus, the initial statement made by the insured indicating non-liability was material and in reliance thereon insurer was justified in not investigating further. At this point the similarity between the cases disappears. In the Lingle case, the insurer's statement was given within a short time after the accident. It appears that the insurer completed no other investigation before the statement and as previously stated it was justified in not investigating further. The second statement repudiating the first was not given until over two years later at a time when suits filed by the injured persons were pending. It "went without saying" that the insurance company was prejudiced by the insured's breach of the cooperation clause. It was evident that the insured's breach did seriously impair the insurer's investigation.
It is just as evident that in the case before us the insured's breach did not seriously impair the insurer's investigation. The evidence reveals that much of the investigation was completed prior to the time of the insured's first statement. The insurer alleges that it was prejudiced because it ceased its investigation, but it does not indicate what investigative steps remain to be completed.
Under the circumstances of this case, the finding of the chancellor that there was no prejudicial breach of the cooperation clause should not be disturbed.
Under § 627.0127 Fla. Stat., F.S.A., the chancellor was correct in taxing attorney's fees against the insurer in favor of the insured.[2]
Accordingly the interlocutory decrees appealed from are affirmed.
Affirmed.
NOTES
[1] Citing American Fire & Casualty Co. v. Vliet, 148 Fla. 568, 4 So.2d 862, 139 A.L.R. 767 (1941); American Universal Insurance Co. v. Stotsberry, Fla.App. 1959, 116 So.2d 482; Barnes v. Pennsylvania Threshermen & F. Mutual Cas. Ins. Co., Fla.App. 1962, 146 So.2d 119.
[2] Johnson v. Atlantic National Insurance Company, Fla.App. 1964, 163 So.2d 340; James Furniture Mfg. Co., Inc. v. Maryland Cas. Co., Fla.App. 1959, 114 So.2d 722.