JESÚS HERNÁNDEZ NIEVES, Plaintiff and Appellant, *v.* JUAN ROSARIO, ET AL., Defendants and Appellees.

No. 9257. Argued May 7, 1946.—Decided June 14, 1946.

*José López Baralt* and *R. Rodríguez Lebrón* for United States Casualty Co., appellee. *José C. Jusino* for plaintiff in the main action. *Enrique Segarra, Jr.,* for Hartford Accident & Indemnity Co., as *amicus curiae.*

ON RECONSIDERATION

MR. JUSTICE SNYDER delivered the opinion of the court.

This is a damage suit for injuries suffered by the wife of the plaintiff in 1941 while traveling as a passenger in a public automobile, P. A. 85, which was covered by an insurance policy issued pursuant to Act No. 33, Laws of Puerto Rico, 1941 (p. 548). The policy provided that it will not cover any accident which occurs while the automobile is driven by any person other than the owner. There is no dispute that at

the time of this accident the automobile was being driven by a person other than the owner. The district court granted the motion of the defendant insurance company for summary judgment, and the plaintiff appealed.

■ The plaintiff argues that Act No. 33 provides for compulsory insurance of a "P. A." automobile and that Act No. 33 also provides that such insurance shall cover the car whether it was being driven by the owner or not. The plaintiff therefore contends that under *Rondón* v. *Aetna Casualty & Surety Co.*, 56 P. R. R. 418, the policy herein, issued pursuant to Act No. 33, covers an accident which occurred while a person other than the owner was driving, despite the provision of the policy excluding such an accident from its coverage.

Section 1 of Act No. 33, amending Act No. 75, Laws of Puerto Rico, 1916 (p. 140), as amended, establishes a schedule of license fees for automoviles and drivers; *"Provided, however,* That the automovile operated by its owner as a public carrier, if the owner personally drives it and he does not own, hold, or control other motor vehicles used in the transportation of passengers for pay, shall be considered his tool of work, and as such, shall not pay any fee, nor shall the owner thereof pay any fee for operating or driving said automobile." This proviso is made applicable only to cars having a capacity of eight passengers or less. And "Any person owning or operating as a public carrier more than one automobile owned by him . . . and who tries to obtain the benefits of this Act . . . shall be guilty of a misdemeanor . . . and . . . shall, upon conviction, be punished by a fine . . . or by imprisonment . . ."

Section 1 then provides the following: "The owner of an automobile who operates it as a public carrier and receives the benefit of exemption from the payment of the fee because *said automobile* is considered a tool of work, shall pay the sum of twenty-nine (29) dollars a year. . . . Said sum of twenty-nine dollars shall be covered into a special

fund in the Treasury of Puerto Rico and shall be applied by the Treasurer of Puerto Rico to pay the premium on an insurance policy covering the accidents caused by *said vehicle* to passengers traveling thereon, and to third persons, and to that end the Treasurer of Puerto Rico shall pay the said sum of twenty-nine dollars to the insurer who upon a public call for bids issued for the purpose by the Supply Committee of the Insular Government, offers the best terms and is awarded the contract in accordance with such rules as the said Supply Committee may prescribe therefor. In case no insurer should file a bid, or should the award not be made to any of those who file bids, because the terms offered are not considered acceptable, the sums paid by the owners of public automobiles and which were to be applied to such insurance policy, shall be withheld in the Insular Treasury in a special fund, until an insurer is found who is willing to establish the insurance desired, or until a state insurance fund is established to cover these accidents, or until the Legislature of Puerto Rico otherwise decides.

''* * * * * * *

''No public carrier which has obtained the benefits of the exemption herein established may travel over the roads of Puerto Rico unless it has paid the said sum for such insurance policy. The Treasurer of Puerto Rico shall issue a certificate of such payment which shall be posted on a conspicuous part of the automobile.'' (Italics ours.)

There are a number of differences between Act No. 33 and a typical compulsory insurance statute.[1] *First*—under the latter the car owner has no option; he must obtain an insurance policy. But under Act No. 33 an owner may or may not pay twenty-nine dollars into the insurance fund

---

[1] See Annotations, 95 A.L.R. 1224; 85 A.L.R. 20; 106 A.L.R. 516; *Rondón v. Aetna Casualty & Surety Co., supra; Leonardo* v. *De Vellis,* 198 N.E. 264 (Mass. 1935); *Guzenfield* v. *Liberty Mut. Ins. Co.,* 190 N. E. 23 (Mass. 1934); *Grasso* v. *Cannon Ball Motor Freight Lines,* 81 S.W. (2d) 482 (Tex. 1935); *Kruger* v. *California Highway Indemnity Exchange,* 258 Pac. 602 (Calif. 1927).

as he chooses. Instead of paying the twenty-nine dollars, he may pay the regular license fee and operate as a public carrier without insurance.

*Second*—in a compulsory policy the coverage is for a specific amount. Here, even if the owner chooses to pay the twenty-nine dollars, no specific coverage is provided; the only insurance contemplated by Act No. 33 is, such insurance as the Treasurer is able to purchase with the fund.

*Third*—compulsory insurance statutes make the issuance of a policy a condition precedent to operation of the automobile on the highways. Under Act No. 33 the owner is not barred from the highways until he insures his automobile. He need only pay twenty-nine dollars into the fund to come within the statute. He thereupon receives a "P.A." license and is no longer concerned with the matter. Thereafter, whether or not any insurance coverage is effected, depends on the efforts of government officials.

*Fourth*—the insurance under a typical compulsory statute must cover the automobile, irrespective of the identity of the driver, provided he is an authorized agent to drive. Here, as we have seen, the question to be determined is whether Act No. 33 permits the policy to be limited to accidents occurring while the owner is driving.

*Fifth*—a compulsory insurance statute is enacted primarily, if not exclusively, for the benefit of passengers and pedestrians. But, as we shall see, Act No. 33 was designed primarily to benefit those members of the chauffeur class who own only one car and operate it themselves for their livelihood.

Policies issued under compulsory insurance statutes frequently contain conditions disclaiming liability if the operator of the automobile drives without a license or if the insured fails to notify the insurer of the accident or violates other conditions subsequent to the accident which

are set forth in the policy. The rule is that under a compulsory policy violation of such conditions cannot prejudice the rights under the policy of an injured third party. Annotation, 76 A.L.R. 23, 231-35; *Rondón* v. *Aetna Casualty & Surety Co., supra*, and cases cited therein; *Ott* v. *American Fidelity & Casualty Co.*, 159 S.E. 635 (S.C. 1931). The differences between Act No. 33 and the usual compulsory insurance statute may or may not require a different rule if a case arose under Act No. 33 in which such a condition of the policy were violated. But that question is not before us for decision here. In the same way, we need not decide whether a policy issued under Act No. 33 would be interpreted as a compulsory policy in other situations. Here we shall assume that Act No. 33 establishes compulsory insurance to the extent that a policy issued thereunder will be held to provide the coverage contemplated by the statute even if the policy on its face provides a more limited coverage. But the question is precisely whether, as contended by the plaintiff, Act No. 33 provides that the policy issued pursuant thereto shall cover a public automobile, irrespective of the identity of the driver. Or whether, as the insurance company contends, Act No. 33 provides that a policy issued thereunder shall cover a public automobile only when operated by its owner as his tool of work; that the provision in the policy herein limiting its coverage to accidents occurring while P.A. 85 is being driven by its owner as his tool of work is therefore in harmony with Act No. 33; and that consequently this condition is valid and binding on an injured third party.

██ In deciding this question, we find it significant that Act No. 33 was enacted primarily, not to furnish insurance for the public, but for the benefit of owners who drive their own public automobiles, in order to free the tool of work of such owners from the threat of attachment. This conclusion flows from two features of Act No. 33. In the first place,

whether an owner will come under Act No. 33 is voluntary. An owner of a public automobile may choose not to take advantage of its provisions. In that event, there is no protection for the public. Indeed, the insurance company asserts without contradiction that only one out of five public automobiles is covered by a policy issued under Act No. 33. A true compulsory insurance statute would not permit any such limited protection for the public.

In the second place, the option to come under Act No. 33 with its insurance benefits is restricted to owner-drivers of public automobiles, making it evident that the chief purpose of Act No. 33 was to protect the tool of work of such owners from attachment. In this respect, the insurance policy is similar in purpose to § 249, paragraph 4, of the Code of Civil Procedure, which exempts from execution for satisfaction of a judgment, "Tools or implements of a mechanic or artisan necessary to carry on his trade. . ."

In 1942 the Legislature provided even more protection for the owner who operates his own public automobile as his tool of work. It demonstrated that § 1 of Act No. 33 was always designed chiefly for the protection of such owners by adding thereto a provision that "As to the law providing that the costs in criminal cases be imposed upon the accused, approved March 9, 1911, the owner of a public automobile used as a working tool of the said owner, as defined in this Act, shall be considered insolvent, but this determination shall be limited to such cases of misdemeanor as are connected with the use and operation of said automobile." (Section 9 of Act No. 55, Laws of Puerto Rico, 1942, p. 526).

The criminal provisions of Acts Nos. 33 and 55 also point to this result. As we have seen, Act No. 33 provided that it was a misdemeanor for any person owning more than one automobile to attempt to obtain the benefits of Act No. 33. And § 9 of Act No. 55 added a provision that "Every person operating a public automobile subject to the benefits of exemp-

tion herein established, without being the owner of said automobile, or without being authorized therefor by the Commissioner of the Interior, as the proper case, shall be guilty of a misdemeanor and, upon conviction, shall be punished by a... fine ... or by imprisonment...''. These criminal provisions forestall circumvention of the purpose of Act No. 33 by owners who might otherwise buy a number of automobiles and, after obtaining for each of them the benefits of the insurance fund provided in Act No. 33, hire chauffeurs to operate them as public automobiles. We therefore see that these criminal provisions lead us to the same conclusion: the purpose of Act No. 33 was that the insurance benefits provided therein would apply only to cases where the owner himself always operated his public automobile as his tool of work.

As already noted, under a typical compulsory insurance statute the insured must obtain an insurance policy for, a specific amount as a condition precedent to the operation of his automobile on the highways. Here the owner is not required to obtain any insurance. He pays twenty-nine dollars into a fund. Thereafter, for all he knows, the Treasurer may never be able to obtain any insurance with this fund. The Treasurer is required to purchase the most insurance he can with this fund from the insurer ''who upon a public call for bids ... offers the best terms ...'' The Treasurer accepted the bid of the defendant insurance company which provided for a $1,000 policy with coverage limited to accidents occurring while the owner was driving his public automobile as the tool of his work. There is nothing in the purpose of Act No. 33 which prohibits this contract. Rather, this limitation of coverage is more in harmony with the spirit of the statute than a broader coverage. Apart from the fact that if the insurance contract provided for coverage even when the automobile was not being driven by the owner it would be in open violation of the criminal provisions of Acts No. 33

and No. 55 prohibiting that practice, to provide for such broader coverage would inevitably require a reduction in the amount of coverage which the companies would be willing to give for twenty-nine dollars. And coverage for less than the present figure of $1,000 would tend to defeat the chief purpose of the statute: the provision of sufficient coverage to avoid attachment of a public automobile operated by its owner as his tool of work.

We find nothing in the language of Act No. 33 which defeats the purpose of that statute to provide for insurance covering a public automovile only if it is operated by its owner as his tool of work. On the contrary, we believe that, reading § 1 of Act No. 33 as a whole and bearing in mind the purpose of the statute, the provision therein that the policy shall cover only accidents caused "by said vehicle" means that the policy shall cover only accidents caused by the vehicle when operated by its owner as his tool of work.

It may be argued that the symbol "P.A." on the license plate of a public automobile is a representation to the public that the car carries insurance, irrespective of the identity of its chauffeur. The answer is that the Legislature has provided for a restricted representation: this public automobile is insured, provided it is being driven by its owner.

 It remains only to distinguish the *Rondón* case. That case involved a regulation of the Public Service Commission which provided for a fixed amount of insurance and for absolute liability for all accidents due to the negligent operation of a motor vehicle used as a public carrier, whether it was operated personally by the insured or by his agent. Since this was a typical compulsory insurance case, we followed the well-established rule that in such a case the insurer could not invoke against the injured third party the defense that the driver "lacked the age and the license required by law."

As we pointed out in the *Rondón* case, it was (p. 430) "the intention of the legislator to provide for those who travel in public auto buses and to pedestrians the absolute guarantee of a bond.... ". And we quoted with approval from *Gillard* v. *Manufacturers Casualty Ins. Co.*, 104 Atl. 707 (N.J. 1918) that (p. 429) "The policy of insurance is filed only for the benefit of persons who might suffer injury. ..., The sole beneficiary of the statute is the person injured."

The regulation of the Public Service Commission contemplated that the driver would be constantly changing. And it provided, primarily for the benefit of the public, as a condition precedent to operation of the vehicle in the transportation of passengers for hire, that a policy be issued providing for a specific amount of coverage against all accidents, no matter who was driving. Here we have a policy which is in the first instant optional, with the option exclusively to an owner who drives his public automobile as his tool of work. If the owner chooses to avail himself of this option, the statute provides for a policy of indefinite coverage. But this policy is primarily for his benefit to avoid attachment of his automobile; to this extent at least, the policy is more like voluntary insurance where the insured, while providing for protection to the public, is primarily interested in protecting himself and his property from damage suits. This case is therefore obviously different from the *Rondón* case. And since Act No. 33 contemplates that only a public automobile operated by its owner will be entitled to the benefits thereof, a policy issued pursuant thereto may be properly restricted to accidents ocurring while the owner is operating the automobile as his tool of work.

The rule that conditions cannot be inserted in a compulsory insurance policy to the prejudice of passengers or pedestrians is of course qualified to the extent that the policy may contain conditions which are in harmony with the statute which requires the policy. Cf. Annotation, 141 A.L.R. 628;

*Simon* v. *American Casualty Co. of Reading, Pa.,* 146 F.(2d) 208 (C.C.A. 4th, 1944); *Travelers Ins. Co.* v. *Caldwell,* 133 F.(2d) 649 (C.C.A. 8th, 1943); *Foster* v. *Commercial Standard Ins. Co.,* 121 F.(2d) 117 (C.C.A. 10th, 1941); *Stewart* v. *Hoffmeister,* 65 S. W. (2d) 220 (Tenn. 1932). The condition in the policy herein that liability was limited to accidents occurring while the automobile was being operated by its owner as his tool of work was not in conflict with Act No. 33. And since the wife of the plaintiff was injured in an accident which occurred while the automobile was being driven by a person other than the owner, the defendant insurance company is not liable therefor under the terms of the policy.

█ The concurring opinion rests on considerably broader grounds than the views stated herein. If we accepted the reasoning of Mr. Justice Córdova, we would in effect be holding (1) that Act No. 33 provides for a policy which is wholly voluntary, and (2) that as a consequence a policy issued thereunder could validly provide, to the prejudice of an injured third party, any conditions on which the insurer and insured agreed. Under this theory, for example, the policy could properly provide that failure of the insured to notify the insurer of an accident within twenty-four hours of its occurrence would relieve the insurer of liability to the injured third party. But it will be time enough to state our views on such cases when they arise. The present case can be decided by holding that even if a policy under Act No. 33 is compulsory insurance to the extent already stated, the provision therein for limitation of coverage to accidents occurring while the owner is driving his public automobile as his tool of work was contemplated by Act No. 33 and is therefore binding on the injured third party.

For the reasons stated, our opinion and judgment reversing the judgment of the district court will be withdrawn, and a new judgment will be entered affirming the judgment of the district court.

### CONCURRENT OPINION OF MR. JUSTICE CORDOVA

Although I agree with the opinion of the court, I prefer to base the decision on the following ground:

We are not faced with a case in which the Legislature has determined, either expressly or impliedly, the amount and conditions of compulsory insurance. When there is legislation imposing minimum compulsory insurance requisites, the Legislature does not usually provide, nor can it provide, how much is to be paid for the insurance. Whatever it costs, it must be paid. The same thing is true of any other minimum requisite imposed by the Legislature for the protection or welfare of the public, as, for instance, that automobiles have adequate lights for night traveling. The cost of lights which comply with the minimum requisites is immaterial: they must be had. If the Legislature had only provided that every owner of an automobile should equip it with such lights as could be bought for one dollar, the required lights would be those which could be bought for one dollar. That is what the Legislature has provided in Act No. 33 of 1941, in regard to the insurance of public automobiles. The lawmaker has only provided for such insurance as the Treasurer may obtain for twenty-nine dollars and has added that the Treasurer shall buy it from the insurer who "offers the best terms." It is evident that the only conditions required by the Legislature are those which the Treasurer might obtain by paying twenty-nine dollars for each insured vehicle. If in order to obtain insurance up to $1,000, the Treasurer had to agree that the insurer would be liable only in cases where the owner of the vehicle was driving it, that agreement is in perfect harmony with the Act and is binding and effective.

### DISSENTING OPINION OF MR. CHIEF JUSTICE TRAVIESO, IN WHICH MR. JUSTICE TODD, JR., CONCURS

June 26, 1946.

For the reasons which I shall set forth in the course of this opinion, I feel bound to dissent from that rendered by the court in the instant case.

The facts upon which there is no controversy, are the following:

The plaintiff and his wife were traveling as passengers on an insured public automobile—"P.A. 85"—when, in consequence of the alleged negligence of the driver of the vehicle, the wife of the plaintiff, appellant herein, suffered serious injuries for which he claims compensation in the sum of $5,000. At the time the accident occurred, the automobile was being driven by the chauffeur and not by its owner, defendant Gregorio Cruz Rivera. The complaint alleges that, at the time of the accident, the car was insured with United States Casualty Co. of New York against liability for accidents caused by said vehicle to passengers or third persons, up to the sum of $1,000, in accordance with the provisions of Act No. 33 of April 14, 1941.

The insurance company in its answer denied the essential allegations of the complaint and set up as special defenses: (a) that the facts alleged were insufficient to constitute a cause of action; (b) that the policy covered only codefendant Gregorio Cruz Rivera, as owner of the vehicle; and (c) that the policy issued in favor of Gregorio Cruz Rivera contained, among others, the following special conditions:

"3. This policy shall be effective only while the insured vehicles are driven by their owners whose names are set forth in the attached rider.

"4. This policy shall not cover any accident occurring when the vehicles are driven by persons other than those named as owners in the attached rider, and no substitution of a driver shall be valid unless a written indorsement is issued by the general agents of the company.

"5. No substitution shall be made unless the ownership of the car has changed and the vehicle is used by the new owner thereof as his tool of work, in accordance with the provisions of Act No. 33, approved April 14, 1941."

The defendant company further alleged that Art. 3 of the Regulations for the execution of said Act No. 33 imposes on the owner of an insured automobile the obligation to give

to the agents of the company, within a period not exceeding 24 hours, notice of any accident in which any passenger may be injured; that complaince with that requisite is indispensable to compel the company to pay the indemnity agreed; that neither the insured nor any other person gave such notice to the defendant company, and the insurer learned of the accident for the first time when the complaint was filed; that at the time of the accident the automobile was not being operated by its owner, the insured, as a tool of work; that the person who drove the vehicle at the time of the accident was not authorized by the Government of Puerto Rico to operate motor vehicles; that there was no relationship, contractual or otherwise, between the plaintiff and the driver of the vehicle whereby the insurer would be bound to pay the indemnity claimed from it.

On motion of the defendant company, the lower court rendered judgment dismissing the complaint as to the insurer.

The appellant urges that the lower court erred in holding that the policy issued by the defendant company only covered accidents occurring while the vehicle was being driven by the person whose name was recorded as owner thereof in the Department of the Interior; in not considering the evidence regarding the circumstances in which the vehicle was being operated by a person other than its owner; and in rendering a summary judgment, erroneously applying Rule 56 of the Rules of Civil Procedure.

The only question to be considered and decided by us is whether a policy, issued under the conditions stated above, covers an accident which occurred while the insured vehicle was being driven by a person who did not own it nor was authorized to operate motor vehicles.

Section 10 of the Act to regulate the operation of motor vehicles, approved April 13, 1916, as amended by Act No. 33 of April 14, 1941, provides that "the automobile operated by its owner as a public carrier, if the owner personally drives

it and he does not own, hold, or control other motor vehicles used in the transportation of passengers for pay, shall be considered his tool of work, and as such, shall not pay any fee, nor shall the owner thereof pay any fee for operating or driving said automobile." Said Section further provides as follows:

"The owner of an automobile who operates it as a public carrier and receives the benefit of exemption from the payment of the fee because said automobile is considered a tool of work, shall pay the sum of twenty-nine (29) dollars a year .... Said sum of twenty-nine dollars shall be covered into a special fund in the Treasury of Puerto Rico and shall be applied by the Treasurer of Puerto Rico to pay the premium *on an insurance policy covering the accidents caused by said vehicle* to passengers traveling thereon, and to third persons, and to that end the Treasurer of Puerto Rico shall pay the said sum of twenty-nine dollars to the insurer who upon a public call for bids . . . offers the best terms and is awarded the contract . . .

"' . . . * * * * * * *

"No public carrier which has obtained the benefits of the exemption herein established may travel over the roads of Puerto Rico unless it has paid the said sum for such insurance policy. The Treasurer of Puerto Rico shall issue a certificate of such payment which shall be posted on a conspicuous part of the automobile." (Italics ours.)

Two purposes were sought by the lawmaker in enacting the above-quoted provisions, to wit: (1) To grant to the owner of an automobile, when he personally drives it as a tool of work and operates it as a public carrier, exemption from the payment of any fee for the operation of the vehicle; and (2) in consideration of such exemption, to impose upon the owner of the vehicle the obligation to pay the necessary sum for satisfying the premium on an insurance policy covering the accidents caused by said vehicle.

There is involved, therefore, an insurance contract entered into between the owner of a public service vehicle and the insurer, in favor and for the benefit of any passenger or pe-

destrian who might be injured in consequence of an accident caused by the vehicle. The involuntary or compulsory character of the insurance is shown by the statute itself, which provides in effect that the vehicle can not travel over the public roads of Puerto Rico unless its owner has paid the sum necessary for obtaining the insurance policy.

The statute under consideration does not provide, either expressly or impliedly, that the policy shall cover only those accidents occurring while the owner of the vehicle is personally driving the same. It is the policy herein which so provides under the special conditions already mentioned. Are those conditions binding upon the person injured where, as in the present case, there is involved a compulsory or involuntary insurance? Let us see.

In *Rondón* v. *Aetna Casualty & Surety Co.*, 56 P.R.R. 418, a policy had been filed by a public carrier "to answer for any compensation awarded to any person injured as the result of an accident due to the carelessness of the public carrier or its employees." The insurer alleged that the carrier had violated the conditions of the policy because at the time of the accident the vehicle was being operated by a person who lacked the age and the license required by law, thus relieving the insurer from all liability under the policy.[1] The evidence showed that at the time of the accident the driver of the vehicle had no license and had not attained the age of 16 years required by law for obtaining such a license; and that the policy expressly provided that the company would not be liable while the automobile was driven by any person under the age of sixteen years. The district court gave judgment for the insurer, declaring that the defenses set up by the latter against the insured were valid as against the person injured. This court reversed the judgment of the court *a quo* and overruled its own decision in a former appeal between

---

[1] *González* v. *U. S. Casualty Co.*, 55 P.R.R. 646; *Coleman* v. *New Amsterdam Casualty Co.*, 247 N. Y. 271; *Hynding* v. *Home Accident Ins. Co.*, 214 Cal. 743; *Nelson* v. *Ins. Co.*, 111 N. J. Law 345; see monograph in 106 A.L.R. 516, 532.

the same parties (46 P.R.R. 593), holding, in accordance with the decisions of state courts,[2] that where the insurance is compulsory, that is, where the policy has been issued in compliance with a statute requiring the filing of such policy before the insured can obtain a license to engage in the transportation of passengers for pay, the policy can not contain any provisions except those authorized by the statute, so as to affect any person suffering damages caused by the insured vehicle.

Section 10 of the Act to regulate the operation of motor vehicles, *supra,* imposes on the public carrier the obligation of paying the premium on an insurance policy covering the accidents caused by the vehicle, as a condition precedent to its right to travel over the highways of Puerto Rico. We fail to find in said Section or in any other place in the Act, any provision to the effect that the policy required by the statute shall protect the passenger or the pedestrian only if the owner of the vehicle was driving it at the time of the accident. It is true that in the policy issued in the instant case there was set forth, as a special condition, that the policy "shall not cover any accidents occurring when the vehicles are being driven by persons other than those named as owners in the attached rider," unless the substitution has been authorized by the general agents of the company. But that condition is not binding upon the injured person. As was said in *Gillard* v. *Manufacturers' Casualty Ins. Co., supra:*

"Whatever other provisions the filed policy contains may be good as between the insurer and the insured auto bus owner, and may impose upon the latter certain duties and obligations . . . , for breach of which the insurer can maintain an action; but such provisions cannot deprive an injured person of the remedy given by the statute, nor can they in any way abridge the rights granted by the statute to such injured person . . . . The sole beneficiary of the statute is the person injured. The insured person is the only one

[2] *Gillard* v. *Manufacturers' Casualty Ins. Co.,* (N.J.) 104 A. 707; *Gillard* v. *Manufacturers' Ins. Co.,* 107 A. 446; *Boyle* v. *Manufacturers' Liability Ins. Co.,* 115 A. 383.

who can sue under the policy, and cite the statute in support of the action. The injured person's rights in the policy of insurance are original and primary, not derivative and secondary."

We fail to see any reason why the doctrine laid down in the case of *Rondón* v. *Aetna Casualty & Surety Co., supra,* should not be applied to the case at bar. There, as here, the owner of the insured vehicle, in violation of certain conditions of the policy not required by the statute, permitted the car to be driven by a person who held no license for operating motor vehicles. In requiring the insurance of public service automobiles, the lawmaker intended to give to the persons who travel on said vehicles and also to pedestrians an unqualified assurance that they will receive compensation for any damages caused to them by the negligence of the public carrier, or of the persons entrusted by the latter with the operation of the vehicles. That guaranty can not and should not be impaired or affected in any way by any conditions which the insurer and the insured may deem advisable to include in the insurance contract in order to govern the relations between the contracting parties. A breach of those conditions will doubtless give a right of action to the insurer as against the insured; but it can not be set up so as to deprive the injured person of the protection afforded to him by the statute.

The fundamental error of the opinion of the court clearly appears in the following paragraph:

"There are a number of differences between Act No. 33 and a typical compulsory insurance statute. (Citing authorities.) *First*— under the latter the car owner has no option; he must obtain an insurance policy. But under Act No. 33 an owner may or may not pay twenty-nine dollars into the insurance fund as he chooses. Instead of paying the twenty-nine dollars, he may pay the regular license fee and operate as a public carrier without insurance."

It is indisputable that an owner of an only automobile, which he operates as a tool of work, can not be compelled to submit to the provisions of Act No. 33 cited. He may, if he chooses, avail himself of the benefits of said Act or devote

himself to the business of transportation of passengers by paying the license fees fixed by the laws in force. But it seems equally indisputable that when the owner of the vehicle has exercised that option and has come under the benefits of Act No. 33—exemption from payment of license fees and possibly exemption from attachment of the automobile by reason of its being considered a "tool of work"—from that moment, compulsorily and without any option whatsoever, the obligation to pay the sum of $29 a year to cover the premium "on an insurance policy covering the accidents caused by said vehicle" to the passengers or third persons, falls upon him. The situation can be compared to that of a person admitted to the practice of law. Nobody can compel such person to practice as a notary. The lawyer may or may not, at his option, practice the notarial profession. But if he chooses to practice it, then he is compelled to furnish a bond as provided by law. The same can be said of the owner of one or more busses. He can travel freely over the public roads and streets, without being bound to insure the vehicle. But if he chooses to devote his vehicles to the public service of transportation of passengers, then the unavoidable obligation to take an insurance policy before he can devote himself to that business falls upon him.

That the insurance to which § 10 of Act No. 33, *supra*, refers is compulsory is shown by the clear and conclusive provision that "no public carrier which has obtained the benefits of the exemption herein established may travel over the roads of Puerto Rico unless it has paid the sum *of such insurance policy.*" And as evidence that the provisions of the Act have been complied with and that the vehicle legally travels by the roads, the law provides that the automobile must carry in a conspicuous part thereof a certificate of payment issued by the Treasurer.

It is true that Act No. 33 does not specify which shall be the coverage of the insurance policy. It only provides that the owner of an automobile which has availed himself of the

benefits of the Act shall pay the sum of $29 a year and that said sum "shall be covered into a special fund in the Treasury of Puerto Rico and shall be applied by the Treasurer of Puerto Rico to pay the premium on an insurance policy covering the accidents caused by said vehicle." The court is of the opinion that the fact that the statute does not specifically fix the coverage of the policy is sufficient to take off the compulsory character of the insurance, leaving the victim of an accident subject to all the defenses which the insurance company might bring against the owner of the vehicle for his breach of the conditions of the policy. We respectfully think that the court has incurred in error since it did not take into account the clear and evident purpose of the lawmaker.

Since the two fundamental purposes of the Act are to help, through the exemption of the payment of license fees, the great number of persons who are owners of an only automobile and to protect the victims of accidents caused by the vehicles through an insurance policy, the lawmaker desired to protect both by providing what was needed to obtain the greatest coverage possible with the $29, which the law compels every owner of a vehicle to pay. To this effect it provided that the $29 a year shall be paid to the Treasurer of Puerto Rico, to be covered into a special fund which shall be applied by the Treasurer to pay the premium of an insurance policy. In order to avoid that every owner of a vehicle should have to obtain any insurance he can find for a $29 premium and make possible the obtention of a greater coverage through group insurance of the vehicles, which are operated as public carriers under Act No. 33, the lawmaker provided for a global fund, constituted the Treasurer as agent of the owners of said vehicles, and imposed upon him the duty to use the special fund to obtain a policy from the insurer, who in a public call for bids, should offer the best terms.

We can not agree with the findings of the court that the statute does not provide that the issuance of the policy shall

be a condition precedent to the operation of the automobile over the public highways; and that all that the owner of the vehicle has to do is to pay the sum of $29, he being *ipso facto* authorized to devote himself to the business of transportation of passengers, without any concern of whether or not an insurance policy has been obtained. We have seen that the statute provides that no public carrier may travel over the roads of Puerto Rico unless he has paid said sum "for such insurance policy." The sum of $29 is paid for a specific purpose; and it is paid to the Treasurer in his capacity as agent of the owners of the vehicles, in order that he, under the express provisions of the Act, invest the total sum received by him in obtaining the best policy he can in a public call for bids. In order that we can accept the findings of the court we would have to set up in the Act a new option, that is, that the Treasurer may or may not, at his option, obtain the policy; and we would have to hold that in both cases the owner of the vehicle is entitled to operate it over the roads, without concern to the protection which the law has desired to give to the passengers and pedestrians.

Nor can we accept as correct the construction given to the statute in the sense that the Treasurer is empowered by law to accept and include in the policy any condition which the insurance company might deem advisable to require, even if those conditions are in contravention of the express provisions of the statute. The special conditions 3, 4, and 5 included in the policy in the instant case, *supra,* in which it is stipulated that the policy shall have effect only "while the insured vehicles are driven by their owners" and shall not cover any accident when the vehicles are driven by any other person, are in open conflict with the provisions of § 10 of Act No. 33, *supra,* which directs the Treasurer of Puerto Rico to apply the special fund "to pay the premium on an insurance policy covering the *accidents caused by such vehicles.*" The statute requires a policy which shall protect the passengers and pedestrians against accidents caused by any

insured vehicle devoted to the transportation of passengers and neither limits nor permits limiting the liability of the insurer to those accidents occurring while the owner was driving the vehicle. We are of the opinion that neither the Treasurer of Puerto Rico nor this court is authorized to include in the policy required by the statute the limitations to the liability of the insurer contained in the above special conditions 3, 4, and 5.

We are of the opinion that where a vehicle, insured under the provisions of Act No. 33, causes injury to a passenger or pedestrian, the insurance company is liable to pay said damages, up to the amount of the policy obtained by the Treasurer, not only when the vehicle is driven by its owner, but also when it is driven by any other person with the consent of the owner and for his benefit, in the business of a public carrier.

For the reasons stated we are of the opinion that the summary judgment appealed from should have been reversed and the case remanded to the District Court of Bayamón for further proceedings.